Clinton H. **HOLLIDAY**, for Himself and All Others Similarly Situated

v.

**RAILWAY EXPRESS COMPANY**, Inc. and Local Unions 2040 and 2281, Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO.

Civ. A. No. 12987.

United States District Court
N. D. Georgia,
Atlanta Division.

Dec. 8, 1969.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., Jack Greenberg, Vilma Singer, New York City, for plaintiff.

Dale M. Schwartz, Atlanta, Ga., for Railway Express Co., Inc.

Tom Watson Brown, Atlanta, Ga., for Local Unions 2040 and 2281.

## ORDER

EDENFIELD, District Judge.

We have before us motions to dismiss or in the alternative for summary judgment, filed by the defendant local unions.

Plaintiff, a Negro, began working for Railway Express Company in 1962, as a laborer, loading and unloading trucks, and became a member of Local 2281. On May 22, 1967, along with numerous other Negro employees, plaintiff filed charges with the Equal Employment Opportunity Commission alleging that Railway Express discriminated on grounds of race in their employment practices and maintained segregated restroom facilities. The defendant unions were charged with the failure to adequately represent Negroes, in terms of promotions within the company, and with maintenance of segregated locals, Local 2281 being all black, and Local 2040 all or heavily white. The official report of the Commission states that the employer, Railway Express, was served with a copy of the charges on June 26, 1967, and the defendant unions on July 27, 1967. While Railway Express admits receipt of the charges, the local unions urge that they were not served with the charges, and knew nothing about them until 1969. The Commission on March 7, 1969, found that reasonable cause existed to believe that both the employer and the unions engaged in unlawful practices in derogation of rights protected by Title VII of the Civil Rights Act of 1964. The Commission's investigation indicated that Railway Express in Atlanta employed approximately 800 persons, 283 of whom were Negroes, and that 95% of the Negro employees were classified as laborers. The Commission further found that Negro employees were precluded from holding positions above

that of transfer clerk and that the company's promotion policies were discriminatory. The Commission stated that the company's subsequent installation of a door connecting the white and Negro bathroom facilities did not bring the facilities into compliance with Title VII of the Act. As to the local unions, the Commission found that the unions were segregated and that the segregated representation, by itself, precluded fair and equal representation of Negro union members, without analyzing the merits of the various instances cited by the complainants. On July 11, 1969, plaintiff allegedly received a letter from the Commission authorizing a suit in federal court within 30 days.

On October 3, 1968, during the pendency of the plaintiff's initial complaint with the Commission, the plaintiff was charged with the violation of certain company rules, namely Rule 70(a) which proscribes drinking liquor, gambling, or use of vulgar or abusive language, and Rule 64, which requires employees to comply with the instructions of their supervisors. A hearing was held on October 10, 1968, at which plaintiff was represented by Mr. Joe Ingram, Local and Vice Chairman of the Brotherhood of Railway Clerks. On October 16, plaintiff was found guilty and his employment with Railway Express was terminated on the following day. Mr. Ingram, on the plaintiff's behalf, appealed this decision to the highest officer on the property of Railway Express in Atlanta designated to handle such matters, Mr. J. R. Sowell, City Manager for Railway Express in Atlanta. On November 11, 1968, Mr. Sowell sustained the guilty finding. Two days later Ingram requested Mr. W. A. Johnson, General Chairman for Railway Express employees in Atlanta, to further appeal plaintiff's termination, and on November 22, 1968, such an appeal was made to the Regional Vice President of Railway Express. No further appeals were taken and no decision by the Regional Vice President

was made, after plaintiff filed, on November 5, 1968, a second charge with the Equal Employment Opportunity Commission.

The unions admit that they were served with a copy of plaintiff's second complaint before the Commission. In his second complaint plaintiff charged that Railway Express had terminated his employment in retaliation for the initial discrimination complaint filed with the Commission, and charged the unions with failure to properly represent him in grievance procedures leading to his dismissal.

On July 10, 1969, the Regional Director of the Commission informed Railway Express and the local unions that plaintiff had requested authorization to institute a civil suit in federal court. This request was made, according to plaintiff, so that when plaintiff filed suit on his first complaint, he might also include those acts of discrimination complained of in his second complaint to the Commission, to avoid a multiplicity of actions. Under the Commission's regulations, 29 C.F.R. § 1601.25a(b), "the Commission shall not issue a notice pursuant to § 1601.25 prior to a determination under § 1601.19 or, where reasonable cause has been found, prior to efforts at conciliation with respondent, except that the charging party or the respondent may upon the expiration of 60 days after the filing of the charge or at any time thereafter demand in writing that such notice issue, and the Commission shall promptly issue such notice to all parties." In its July 10 letter, the Commission stated that it was issuing notice to the charging party and that the Commission was willing to offer its services in an effort to resolve the matter through conciliation. Thus, on July 11, 1969, authorization to sue was granted on the initial charge to the Commission and on August 1, 1969, authorization was given on the second complaint. On August 5, 1969, this suit was filed in federal court, incorporating the issues

raised in both the first and second charge.

The defendant unions base their motion to dismiss on the unions' alleged failure to receive copies of the initial charges to the Commission and on the Commission's failure to make a finding of probable cause as to the second complaint filed with the Commission.

■ Under 42 U.S.C. § 2000e–5(a), after the complainant files a charge with the Commission, "the Commission shall furnish such employer, employment agency, or labor organization * * * with a copy of such charge." It is defendants' contention that the Commission's alleged failure to serve the unions with charges as to plaintiff's initial complaint is cause for dismissal of this civil suit in federal court. We cannot agree.

■ First, the Commission's records clearly indicate that the unions were served on July 27, 1967, with a copy of the plaintiff's initial charge, thus creating a dispute of fact not resolvable on the cold record as it stands. Second, the local unions did receive, by their own admission, notice of the charges from the AFL–CIO in March, 1969, after the Commission's finding of probable cause was issued. Moreover, the second complaint filed with the Commission, a copy of which was admittedly given to the unions, makes reference to the initial charge. Defendants contend that they were denied an opportunity to conciliate, due to the failure to receive a copy of the charges. However, they received notice, as noted above, long before this action was filed in federal court, yet they initiated no conciliation efforts. Third, the failure of the Commission to supply respondents with a copy of the charges should not be a fatal bar to a private action in federal court. Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258 (E.D. La.1967), rev'd. on other grounds, Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (1968), *cf.* Pullen v. Otis Elevator Co., 292 F.Supp. 715 (N.D.Ga.1968); International Brotherhood of Electrical Workers Local Union No. 5 v. United States EEOC, 398 F.2d 248 (3d Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565, reversing 283 F.Supp. 769 (W.D.Pa.1967). One judge in this district has held to the contrary. Long v. Georgia Kraft Co., 71 LRRM 2016 (N.D.Ga.1969); Long v. Georgia Kraft Co., 71 LRRM 2018 (N.D.Ga. 1969), in two holdings with which this court must respectfully disagree. There are but a few jurisdictional prerequisites to suit, among which are a charge properly filed with the Commission against the parties named in the civil suit, and receipt by the complainant of statutory notice that the Commission has been unable to secure voluntary compliance through conciliation, followed by a filing within 30 days. Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir. 1967), cert. denied, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166; Dent v. St. Louis-San Francisco Ry., 406 F.2d 399 (5th Cir. 1969); Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968).

■ Thus, for example, even though the Commission has the affirmative obligation to attempt conciliation under § 2000e–5(a), (c), its failure to act cannot bar the plaintiff's right of action. The basis of this decision is that "the complainant should not be made the innocent victim of a dereliction of statutory duty on the part of the Commission." *Choate,* supra, at 361. Likewise, the statutory failure of the Commission to serve charges on the defendants should not bar the plaintiff's action. Were we to otherwise hold, we would stake the life of each plaintiff's complaint on the efficient functioning of an administrative agency—indeed one in which failures to act are common due to its workload. The court in Long v. Georgia Kraft Co., supra, states that *Dent,* supra, while holding that actual conciliation efforts by the Commission are not a jurisdictional prerequisite to suit, recognized the importance of affording *respondent* an *opportunity* to conciliate, and that no op-

portunity can exist for conciliation where the defendant is not served with charges before trial. *Long* is distinguishable in that in the instant action, unlike the situation there, the defendants had notice of the charges long before trial. Additionally, the opportunity to conciliate, if one must in fact exist, is the opportunity for the Commission to initiate conciliation efforts on the complainant's behalf. As the Fourth Circuit put it, in Johnson v. Seaboard Air Line R.R., 405 F.2d 645, 649 (4th Cir. 1968), cert. denied, Pilot Freight Carriers, Inc. v. Walker, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451, "At most, we think a reading of the two sections together means only that the *Commission* must be given an opportunity to persuade before an aggrieved person may resort to court action." (Emphasis added.) In the instant action, the Commission had this very opportunity. Indeed, in its July 10, 1969, letter to the respondents, it offers its offices to conciliate. While certainly conciliation is to be encouraged, what was intended as a further sword for the complainant should not be turned into a shield to deprive the plaintiff of his day in court. A failure of duty by the Commission, of which the plaintiff could have no knowledge, should not bar his private right of action.

The unions also urge that the Commission's failure to find probable cause, under 42 U.S.C. § 2000e–5(a), as to the issues raised by plaintiff's second complaint, is a bar to plaintiff's court action. Again we must disagree. Title VII of the 1964 Civil Rights Act relies for its enforcement largely on private action. Jenkins v. United Gas Corp., 400 F.2d 28, 32 (5th Cir. 1965). The enforcement powers of the Commission are non-existent. Its efforts are only supplementary to those the plaintiff must employ himself. To hold that an administrative failure by an agency lacking enforcement power itself, can deprive the plaintiff of his right to sue, the main weapon in the Title VII arsenal, would exalt form over substance. The legislative history on this question is muddy. Senator Ervin at one point in the Senate debates said that the Commission held the keys to the courthouse door and that no private suit was cognizable unless the Commission first found probable cause and failed to adjust the matter through conciliation. 110 Cong.Rec. 14188 (1964). However, others contradicted this view. *See,* Johnson v. Seaboard Air Line R.R., supra, for a discussion of the legislative history. Senator Ervin's argument, as we have seen, has fallen insofar as it involves conciliation. *Dent,* supra; *Choate,* supra; so too the argument concerning the Commission's failure to find probable cause, should not bar a private right of action, particularly where, as here, its failure arose from its desire to permit the plaintiff to raise the issues in both complaints in one court action. Edwards v. North American Rockwell Corp., 291 F.Supp. 199 (C.D.Cal.1968); *contra,* Green v. McDonnell-Douglas Corp., 299 F.Supp. 1100 (E.D.Mo.1969). The plaintiff's second complaint was properly filed and a letter authorizing suit was issued by the Commission to the plaintiff. As one court put it:

> "The plaintiff is not responsible for the acts or omissions of the Commission. He, and the members of his class, should not be denied judicial relief because of circumstances over which they have no control. The plaintiff exhausted administrative remedies and satisfied the requirements of the Act by filing a complaint with the Commission and awaiting its advice." Quarles v. Philip Morris, Inc., 271 F.Supp. 842 (E.D.Va.1967).

*See also* Evenson v. Northwest Airlines, Inc., 268 F.Supp. 29 (E.D.Va.1967). The plaintiff can do no more. To send the matter back to the overburdened Commission, particularly in the instant action, would be a fruitless gesture, since we already have before us the plaintiff's allegations arising from the initial complaint against the identical parties, growing out of the same employment

relationship. Edwards v. North American Rockwell Corp., supra, 291 F.Supp. at 211.

In short, as the court put it in Reese v. Atlantic Steel Co., 282 F.Supp. 905, 906 (N.D.Ga.1967) (per Morgan, J., now Circuit Judge). "This Court cannot escape the conclusion that the plaintiff has done all that is humanly possible to comply with the statute. His statutory rights cannot go unprotected due to the failure of the Commission." *See also* Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn.1966). The dereliction of duty by the Commission goes to its administrative function, not to the judicial function invoked by the plaintiff. Therefore, defendants' motion to dismiss is denied.

■ In their motion for summary judgment, the unions make several contentions. First, they state that plaintiff's allegation that the unions were segregated is mooted by the April 15, 1969, merger of Locals 2040 and 2281, to which all employees of Railway Express, regardless of race, now belong with equal rights. Of course, when discrimination is voluntarily ended, either before or after the filing of a court suit, the plaintiff's individual court action is not necessarily moot. Jenkins v. United Gas Corp., supra. Plaintiff states, in rebuttal, that he is not now in position to directly observe if the local unions have been truly integrated "or whether the Negro members have been placed in an inferior position in regards to the merger, in terms of officers, positions, and the like." Their second contention is that the plaintiff lacks standing to sue since he was dismissed from employment for the violation of valid rules, rather than on racial grounds. It is pointed out that plaintiff's complaint before the Commission did not mention discriminatory promotions and that plaintiff never alleged that he applied for a promotion. Third, the unions state that the plaintiff received adequate and equal representation as to promotions, noting the absence of discriminatory language in the collective bargaining agreement and in the defense afforded him during dismissal proceedings.

■ The court feels that an issue of fact has been created by the plaintiff's allegations, as they concern the unions, particularly with regard to their equal representation. We cannot decide on a cold record if, in fact, plaintiff has been fairly represented, in practice, despite the simon-pure words of the collective bargaining agreement. The court is as concerned with eradicating discrimination if it exists in deed, as if it is manifest in word. Moreover, there is a dispute in the record over the reason plaintiff's dismissal appeal through the Railway Express hierarchy was dropped by the union after the plaintiff's second complaint was filed with the Commission. If the termination was prompted for racial reasons, then plaintiff may not have been fairly and equally represented. Because of these disputed issues of material facts, summary judgment is inappropriate at this time. While the defendants' contentions indicate the possibility of summarily disposing of some of the plaintiff's allegations, the court would prefer to postpone such a piecemeal disposition until a later date and a fuller record. In any event, summary judgment on the entire complaint, sought by defendant unions, is impermissible at this point.

For the reasons set forth above, the motion to dismiss and the motion for summary judgment are denied.