Frank W. WATSON, Jr., Plaintiff,

v.

LIMBACH COMPANY et al., Defendants.

Civ. No. 69–171.

United States District Court,
S. D. Ohio, E. D.

Oct. 27, 1971.

Irwin W. Barkan, Columbus, Ohio, for plaintiff.

Charles D. Minor, Columbus, Ohio, for Columbus Joint Apprenticeship Committee of the Plumbing and Pipefitting Industry.

Dennis D. Grant, Columbus, Ohio, for Limbach Co.

N. Victor Goodman, Columbus, Ohio, for Local #189.

George L. Jenkins, Asst. Atty. Gen. of Ohio, Columbus, Ohio.

## OPINION AND ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court on the motions to dismiss of the defendants Limbach Company, Local 189 of the Plumbers & Steamfitters International Union, AFL–CIO (Local 189), and the Joint Apprenticeship Council of Local 189, Plumbers & Steamfitters International Union (Joint Apprenticeship Council) and the memoranda of the parties.

This action is brought under the provisions of Title 42, United States Code, Section 2000e et seq. The complaint alleges the following unlawful employment practices:

1.  In August of 1967, plaintiff applied for membership in Local 189's apprenticeship program, but was refused admittance solely because of his race and color.

2.  In August of 1967, plaintiff applied to the Limbach Company for employment as an apprentice plumber, and he was refused employment solely because of his race and color.

3.  In September of 1967, plaintiff applied to the Joint Apprenticeship Council for admission to Local 189's apprenticeship program. He subsequently was administered an "Aptitude Test" designed to exclude him from the program solely because of his race and color. Plaintiff passed the test, but the Limbach Company, Local 189 and the Joint Apprenticeship program refused to call him into the apprenticeship program solely because of his race and color.

The complaint further alleges plaintiff has suffered damages as a direct and proximate result of defendants' unlawful employment practices and that he "will continue to suffer irreparable injury from defendants' policy, practice and custom of discrimination against qualified persons of the Negro race, with respect to employment, referral for employment, admission to union membership and admission to union apprenticeship programs." (Complaint, paragraph 16)

On August 20, 1968, plaintiff filed charges of discrimination against defendants with the Equal Employment Opportunities Commission (EEOC).[1]

---

1.  The EEOC has filed an amicus curiae brief on behalf of plaintiff in the case at bar.

The EEOC referred these charges, consistent with its general procedures and regulations to the Ohio Civil Rights Commission. On November 15, 1968, plaintiff requested that the EEOC assume jurisdiction of his case and on May 1, 1969, his counsel requested the Commission issue a Notice of Suit Letter. The EEOC issued the requested letter on May 5, 1969, and the present action was commenced on June 3, 1969.

Defendants contend the Court lacks jurisdiction over the subject matter of the action and that the complaint fails to state a claim upon which relief can be granted for the following reasons: [2]

1. The complaint does not invoke the jurisdiction of the Court because plaintiff did not file a charge of discrimination with the Ohio Civil Rights Commission (OCRC) prior to filing his charge with the Equal Employment Opportunities Commission (EEOC), thus failing to comply with the requirements of 42 U.S.C. § 2000e–5(b).

2. The EEOC failed to find reasonable cause that plaintiff's charges of unlawful employment practices were true and such a finding is a jurisdictional prerequisite for maintaining an action under the provisions of 42 U.S.C. Section 2000e–5(a).

3. The EEOC did not make an effort to obtain voluntary compliance with the mandate of subchapter 2000e as required by 42 U.S.C. 2000e–5(a), 2000e–5(e).

4. The complaint herein was not filed within sixty days after plaintiff filed a charge with the EEOC as required by 42 U.S.C. Sections 2000e–5(a), 2000e–5(e).

5. Plaintiff did not file a charge of unlawful employment practices with the EEOC within 210 days after the alleged unlawful employment practices occurred as required by 42 U.S.C. Section 2000e–5(d).

Each of these contentions will be discussed separately below.

### I

As the first ground advanced in support of their motions to dismiss defendants assert that plaintiff failed to comply with the filing requirements of 42 U.S.C. § 2000e–5(b).[3] Defendants are not disputing that the EEOC did in fact defer to the Ohio Civil Rights Commission for the sixty day period required by the statute. What the defendants are instead actually questioning is whether the deferral procedure adopted by the EEOC properly comports with the statutory policy set forth in § 2000e–5(b).

In the present case plaintiff filed his charge with the EEOC on August 20, 1968. The EEOC referred the charge to the Ohio Civil Rights Commission on or about that same date. After the passage of more than sixty days plaintiff requested that the EEOC reassert jurisdiction over his charge and the Commission did so on or about November 15, 1968. The EEOC did not require the plaintiff to file a new charge but reasserted jurisdiction over the charge filed on August 20, 1968. This procedure was in conformity with the practices and regulations of the Commission. The de-

---

2. Defendant Limbach Company relies solely upon reasons numbered 3 and 5. Defendants Local 189 and Joint Apprenticeship Council rely upon each of the five grounds.

3. 42 U.S.C. § 2000e–5(b) provides in material part that:
   (b) In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment prac-

tice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated * * *.

fendants are, in effect, challenging the Commission's procedure and argue that plaintiff's filing with the EEOC on August 20, 1968 was a nullity because § 2000e–5(b) requires that the complainant file a charge with a state or local agency *before* he files with the Commission. Defendants' argument continues that since the plaintiff initially filed improperly with the EEOC, the Commission never had jurisdiction over his charge and therefore lacked the authority to defer it to the state agency and to later reassert jurisdiction over it again.

■ Although courts are not unanimous in their views towards this question, this Court holds that the deferral procedure adopted and employed by the EEOC is within the intent of the statute and was properly utilized in the handling of plaintiff's charge.

It has been recognized in the Sixth Circuit that Title VII of the Civil Rights Act of 1964 leaves a burden on laymen, often unschooled in the law and the art of pleading, to assert vital, federally protected rights. See, Tipler v. E. I. duPont deNemours and Co., 443 F.2d 125, 131 (6th Cir. 1971); Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission, 418 F.2d 355 (6th Cir. 1969); also see, Graniteville Company v. Equal Employment Opportunities Commission, 438 F.2d 32 (4th Cir. 1971). The EEOC has also recognized that occasionally these unschooled laymen, unaware that a state or local commission has original jurisdiction over Title VII complaints, file their charge initially with the EEOC. To correct these violations of § 2000e–5(b), the EEOC has adopted a curative regulation, 29 C.F.R. § 1601.12(b).[4]

■ In adopting these regulations the EEOC enunciated as its policy an intent that the filing procedures on the referral of charges to state and local agencies be simplified so that confused laymen could " * * * avoid the accidental forfeiture of important Federal rights." 29 C.F.R. § 1601.12(a). It is well settled that the practical interpretation of a statute by the executive agency charged with its administration, while not necessarily conclusive on the courts, is entitled to the highest respect. See, United States v. City of Chicago, 400 U.S. 8, 91 S.Ct. 18, 27 L.Ed.2d 9 (1971); Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Power Reactor Development Co. v. Electricians, 367 U.S. 396, 81 S.Ct. 1529, 6 L. Ed.2d 924 (1961); Allison v. United States, 426 F.2d 1324 (6th Cir. 1970); Lawson Milk Co. v. Freeman, 358 F.2d 647 (6th Cir. 1966); City of Tullahoma v. Coffee County, Tennessee, 328 F.2d 683 (6th Cir. 1964), cert. den. 379 U.S. 989, 85 S.Ct. 698, 13 L.Ed.2d 609 (1965); also see, International Chemical Workers Union v. Planters Manufacturing Company, 259 F.Supp. 365 (N.D.Miss.1966), and cases cited at p. 366 and n. 4. And the Supreme Court has specifically held that EEOC interpretations of the Civil Rights Act are entitled to the "great deference" normally afforded such administrative agencies. Griggs v. Duke Power Co., 401 U.S. 424, 433–434, 91 S.Ct. 849, 28 L.Ed. 158 (1971).

4. 29 C.F.R. § 1601.12(b) which deals with the referral of charges filed improperly with the EEOC to the appropriate state and local authorities, provides in material part as follows:

(b) The following procedures shall be followed with respect to cases arising in the localities to which the Commission defers:

(1) *Any document, whether or not verified, filed at any field office of the* [EEOC] * * * *which may constitute a charge cognizable under Title VII, shall be deferred to the appropriate State or local agency pursuant to the* procedures set forth below * * * (iii) The aggrieved party shall be notified, in writing, that the document which he sent to the Commission has been forwarded to the State or local agency pursuant to the provisions of section 706(b), and that unless the Commission is notified to the contrary, on the termination of State or local proceedings, or after 60 days have passed, whichever comes first, the Commission will consider the charge to be filed with the Commission and commence processing the case * * *

A substantial body of case law supports the procedures adopted by the EEOC as within the contemplation of § 2000e–5(b) of the statute. A case very similar to the one at bar was before the court in Bremer v. St. Louis Southwestern Railroad Company, 310 F.Supp. 1333 (E.D.Mo.E.D.1969). In that case plaintiff brought a suit for damages under 28 U.S.C. § 1343 alleging her statutory right to be free from discrimination in employment because of sex pursuant to Title VII of the Civil Rights Act. Defendant moved to dismiss alleging among other grounds that plaintiff failed to comply with the procedures required by § 2000e–5(a) and (b), especially that plaintiff failed to file a timely charge with the EEOC. Plaintiff in that case filed her charges with the EEOC on April 23, 1966. The EEOC referred these charges to the Missouri Commission on Human Rights on May 4, 1966. On September 2, 1966, plaintiff requested the EEOC to reassert its jurisdiction and the EEOC did so. Defendant moved the District Court to dismiss plaintiff's complaint for the same reason advanced by the defendants at bar. Chief Justice Harper, after noting that 29 C.F.R. 1601.12 et seq., *supra* " * * * negate defendant's contentions," overruled the motion to dismiss, holding:

Section 1601.12 of the regulations governs referrals to state and local authorities. * * * All of [the procedures in this case which preceded the adoption of § 1601.12 were] done in accordance with the established procedure and regulations of the EEOC. On September 2nd, the plaintiff did request the EEOC to assert its jurisdiction. It is, therefore, September 2, 1966, on which the plaintiff's charge was filed. The present language of § 1601.12(b) recognizes the then existing procedures and explicitly states that the deferred charge is deemed filed with the EEOC upon the notification of the termination of the state proceedings or sixty days, whichever occurs first. Plaintiff was required to request the EEOC to assert jurisdiction; and such was done on September 2, 1966; whereas the present amended regulation provides that the charge is automatically deemed filed unless notified to the contrary. 310 F.Supp. at p. 1338.

See, *accord*, Nishiyama v. North American Rockwell Corporation, 49 F.R.D. 288, 290, 291 (C.D.Calif.1970).[5]

■ The view adopted in these cases commends itself to the Court. The clear Congressional intent evident in § 2000e–5(b) is that the state and local agencies be allowed sixty days to effect settlement before the EEOC *actively* intervenes. The regulations adopted by the EEOC

---

5. *Nishiyama* and *Bremer*, like the case now at bar arose before the EEOC adopted 29 C.F.R. § 1601.12, which became effective November 8, 1968. However, it appears that the practice in effect at the time Watson filed his charge was very similar to the one codified in § 1601.12, *supra*. The only major difference seems to be that before the adoption of § 1601.12 after the expiration of sixty days the complainant had to request the EEOC to reassume jurisdiction. The regulation now makes this jurisdictional reassertion automatic unless the complainant requests the EEOC not to do so. See, Brief Amicus Curiae of the Equal Employment Opportunities Commission, p. 5.

In *Nishiyama*, *supra*, the plaintiff filed a charge with the EEOC, alleging job discrimination because of race. The charge was referred, in accordance with standard procedures then in effect, to the California Fair Employment Practice Commission. After more than sixty days had elapsed from the date of the referral, the EEOC, upon plaintiff's request, reassumed jurisdiction. The District Court concluded that although the EEOC did not have jurisdiction of the charge on the day it was originally filed " * * * the combination of the untimely charge that was filed with the EEOC * * * and the request for the EEOC to assume jurisdiction * * * resulted in an appropriate and proper filing and a charge with the EEOC within the meaning and intent of the applicable sections of the Act." 49 F.R.D. at p. 291.

Also see, IBEW, Local Union No. 5 v. Equal Employment Opportunity Commission, 398 F.2d 248, 252 (3rd Cir. 1966), cert. den. 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969).

achieve that result. Charges which are erroneously filed with the Commission are expeditiously referred to the appropriate state or local agency. But it would surely be twisting the legislative intent to infer that Congress intended state jurisdiction to be exclusive to the extent that the erroneous filing of a complaint with the EEOC should undercut the primary Congressional intent of eradicating the practice of discrimination in job employment on the basis of unacceptable criteria such as race, religion or sex. Congress intended that state agencies be allowed to play a part in the general statutory scheme and the Ohio Civil Rights Commission did so in Watson's case. But " * * * the underlying purpose of the 60 day provision was to allow the state to act and not to establish an additional roadblock for the plaintiff * * *." To accept the defendant's theory:

> * * * would go a long way along a route which would effectively nullify remedies under the Act. Surely Congress did not intend to create a procedural morass, or a trap capable of capturing even the wary traveler. To meet the Act's requirements as dictated by defendant, a plaintiff would need to have a Philadelphia solicitor in constant attendance, and he might miss a turn even with this assistance.

Vigil v. American Telephone & Telegraph Company, 305 F.Supp. 44, 47 (D.Colo. 1969). Also see, Everett v. Trans-World Airlines, 298 F.Supp. 1099 (W.D. Mo.W.D.1969); Moss v. Lane Company, 50 F.R.D. 122 (W.D.Va.1970).

The cases of Equal Employment Opportunities Commission v. Union Bank, 408 F.2d 867 (9th Cir. 1968) and Crosslin v. Mountain States Telephone and Telegraph Co., 422 F.2d 1028 (9th Cir. 1970), cert. granted and vacated and remanded, 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971), cited by defendants in support of their contentions, are clearly distinguishable. In neither case does it appear that the state commission was given *any* notice of the complainants' charges. This is clearly violative of § 2000e–5(b) but factually distinguishable from the case at bar where the EEOC referred Watson's charges to the Ohio Civil Rights Commission in conformity with the procedure envisioned by the statutory scheme.

Finally, this Court specifically rejects the narrow interpretation of the statute employed in Love v. Pullman Company, 430 F.2d 49 (10th Cir. 1070); cert. granted, 401 U.S. 907, 91 S.Ct. 873, 27 L.Ed.2d 805 (1971). In that case, which dealt in part with the referral procedures adopted by the EEOC, the Court held that: "This practice seeks to channel complaints first to the EEOC which then 'advises' the State agency, gives it sixty days, and then the EEOC automatically proceeds. The statute does not contemplate this procedure." 430 F.2d at p. 53. This view brought a sharp dissent by Fahy, J., with whose views this Court is more in accord.[6] In any event the actual holding in *Love, supra,* is based on a statute of limitations point under § 2000e–5(d), which is not applicable to the case now before this Court. To the extent that *Love*

6. Senior Circuit Judge Fahy, sitting by designation on a panel of the Tenth Circuit Court of Appeals, wrote in response to the majority's view on this point that: EEOC's past procedure and present regulations do not run counter to the policy of the Act. * * * Yet, with no mention of the current regulations, the court rules inconsistently with them, and in my view thus unduly restricts the right of EEOC to entertain and expedite claims for which it has responsibility under the Act to seek a solution. I think we should keep in mind that, "[w]e are not dealing with businessmen-plaintiffs or plaintiffs accustomed to consulting lawyers about their rights. This law is a remedial one, and the Congressional purpose would not be furthered by making plaintiffs of the kind with which we are concerned, members of the working class who are generally without substantial higher education, dot every 'i' and cross every 't' on the way to the courthouse." Antonopulos v. Aerojet-General Corp., 295 F.Supp. 1390, 1395 (E.D.Cal.1968). 430 F.2d at pp. 55–56.

fails to take into account "\* \* \* both the spirit of the Act and the legislative intent and history," see *Vigil, supra,* this Court respectfully declines to follow its teachings. Defendants motion to dismiss under § 2000e–5(b) is therefore without merit.

## II

Defendants next maintain that plaintiff failed to comply with the requirements of 42 U.S.C. § 2000e–5(a).[7] Specifically, defendants assert that a finding of "reasonable cause" by the EEOC under that statutory provision is a jurisdictional prerequisite for the filing of a civil suit under § 2000e–5(e). Since the EEOC made no finding of reasonable cause prior to the time plaintiff filed the complaint, defendants move for its dismissal.

■ This view has been rejected by nearly every court that has been called upon to pass on the question and it is rejected here. The finding of reasonable cause by the EEOC is not a prerequisite to the institution of a private civil rights action under § 2000e–5(e). See, Dent v. St. Louis-San Francisco Railway, 406 F.2d 399 (5th Cir. 1969); Miller v. International Paper Company, 408 F.2d 283 (5th Cir. 1969); Culpepper v. Reynolds Metals Company, 421 F.2d 888 (5th Cir. 1970); McDonald v. American Federation of Musicians of United States and Canada, 308 F.Supp. 664 (N.D.Ill.E.D.1970); Holliday v. Railway Express Company, Inc., 306 F. Supp. 898 (N.D.Ga.1969). Several recent cases have held that private civil

rights suit may be brought even though the Commission determines there is *no* reasonable cause to believe the defendant has engaged in discriminatory employment practices. See, Beverly v. Lone Star Lead Construction Company, 437 F.2d 1136 (5th Cir. 1971); Flowers v. Local No. 6, Laborers International Union of North America, 431 F.2d 205 (7th Cir. 1970); Fekete v. U. S. Steel Corporation, 424 F.2d 331 (3rd Cir. 1970); Robinson v. Lorillard Corporation, 444 F.2d 791 (4th Cir. 1971); Grimm v. Westinghouse Electric Corporation, 300 F.Supp. 984 (N.D.Calif. 1969). The Court believes that the view expressed in these cases strikes the proper balance between private Title VII litigants, the Commission and the Courts and that this was the balance intended by Congress when it created the statutory scheme.

The legislative history of Title VII is well reviewed in Miller v. International Paper Company, *supra.* The original version of Title VII, H.R. 405, would have created a powerful fair employment practices commission with broad investigatory and enforcement powers. H.R. 405 was amended and substituted by H.R. 7152 which removed the commission's enforcement powers but allowed it to file civil suits in behalf of aggrieved persons. When the bill reached the Senate it was amended to its present form and the right to bring civil enforcement actions was lodged exclusively with private litigants in those cases where the aggrieved person instituted proceedings by filing a charge.[8]

---

7. 42 U.S.C. § 2000e–5(a) provides in material part as follows:
   (a) Whenever it is charged in writing under oath by a person claiming to be aggrieved \* \* \* that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization (hereinafter referred to as the "respondent") with a copy of such charge and shall make an investigation of such charge \* \* \* If the Commission shall determine,

after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion \* \* \*

8. The Court is aware that the legislative history of this Act is muddy and has been used by both sides in Title VII cases. See, Dent v. St. Louis-San Francisco Railway, *supra;* McDonald v. American Federation of Musicians, *supra*, n. 2; Grimm

Because of the way Title VII emerged from Congress, with the burden of enforcement almost entirely on private litigants, it would be harsh and inequitable to allow plaintiffs' rights to hinge solely on the findings of the Commission. A careful reading of the statute convinces us that Congress did not intend to allow the Commission, stripped as it was of much of its enforcement powers, to be the final and sole judge of the complainants' rights.

This is the most sensible view, for to decide otherwise would be to accept the hypothesis that " * * * Congress intended to entrust the key to judicial relief with an agency given no power to direct the processing of a civil action in court," Fekete v. U. S. Steel Corporation, *supra*; and this would exalt form over substance by holding in effect "that an administrative failure by an agency lacking enforcement power itself, can deprive the plaintiff of his right to sue, the main weapon in the Title VII arsenal" Holliday v. Railway Express Co., Inc., *supra*, 306 F.Supp. at p. 902. This surely cannot comport with the statutory scheme as enacted by Congress. See, Johnson v. Seaboard Air Line R. R., 405 F.2d 645 (8th Cir. 1968); Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968).

Defendants have directed the Court to several cases which held that a finding of reasonable cause by the Commission is a jurisdictional prerequisite to the instituting of a civil suit. See, Burrell v. Kaiser Aluminum and Chemical Corporation, 287 F.Supp. 289 (E.D.La.1968); Green v. McDonnell-Douglas Corporation, 299 F.Supp. 1100 (E.D.Mo.E.D. 1969). *Burrell, supra,* is easily avoided because the court there rested its opinion on the holding of the District Court in Dent v. St. Louis-San Francisco Railway, 265 F.Supp. 56 (1967) which was subsequently overruled by the Fifth Circuit. See, *supra,* 406 F.2d 399 (5th Cir. 1969). The holding in *Green, supra,* is based on an interpretation of the legislative history of Title VII with which this Court does not agree. See n. 8. Defendants' motion to dismiss on this ground is therefore not persuasive.

### III

Defendants assert as the third ground in support of their motions to dismiss that this Court does not have jurisdiction over plaintiff's suit because the EEOC has not been given a chance to obtain "voluntary compliance" as required by § 2000e–5(a) and (e).[9] This assertion is incorrect both as an issue of fact in this case and as a matter of law.

█ Plaintiff has clearly alleged in paragraph 14 of his complaint that the EEOC, on his report, assumed jurisdiction of his charge and " * * * was not able within sixty (60) days thereafter, to secure voluntary compliance by defendant with [§ 2000e–5(a)]." Such an allegation, even standing alone, would be sufficient to withstand a motion to

---

v. Westinghouse Electric Corporation, *supra.* All that we consider important to glean from the remarkably complex legislative journey of Title VII is that the Act that ultimately emerged created a weaker administrative agency than had originally been envisioned and invested individual litigants with wider enforcement powers than had originally appeared likely or desirable. See, Vaas, Title VII: Legislative History, 7 B.C.Ind. & Com.L. Rev. 431 (1966).

9. The applicable parts of § 2000e–5(a) are set out in n. 7. The pertinent language of § 2000e–5(e) is as follows:

(e) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) of this section * * *, the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge (1) by the person claiming to be aggrieved, or (2) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

dismiss where well-pleaded allegations of the complaint are taken as admitted. See, L'Orange v. Medical Protective Co., 394 F.2d 57 (6th Cir. 1968); Lemmon v. Cedar Point, Inc., 406 F.2d 94 (6th Cir. 1969).

However, defendants go even further and argue, in effect, that plaintiff should not have been allowed to file suit until the EEOC had completed its conciliation efforts and informed plaintiff it had been unable to obtain the voluntary compliance of the defendants. In short, defendants argue that a finding by the EEOC that it is unable to obtain voluntary compliance is a jurisdictional prerequisite to the bringing of a civil action under Title VII.

██ This view has been rejected by numerous courts that have considered the question. See, Dent v. St. Louis-San Francisco Railway Company, *supra*; Miller v. International Paper Company, *supra*; Johnson v. Seaboard Air Line Railway, *supra*; Choate v. Caterpillar Tractor Co., *supra*; Hall v. Werthan Bag Corporation, 251 F.Supp. 184 (M.D. Tenn.1966); Evenson v. Northwest Airlines, Inc., 268 F.Supp. 29 (E.D.Va. 1967); Quarles v. Philip Morris, Incorporated, 271 F.Supp. 842 (E.D.Va. 1967).[10]

The rationale for the nearly unanimous holdings of courts that the completion or even initiation of conciliation efforts by the EEOC is not a jurisdictional bar to the bringing of a civil suit was perhaps most persuasively put forth in Johnson v. Seaboard Air Line Railroad Company, 405 F.2d 645 (4th Cir. 1968), cert. den. Pilot Freight Carriers, Inc. v. Walker, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969) where the court held:

It seems clear to us that the statute, on its face, does not establish an attempt by the Commission to achieve voluntary compliance as a jurisdictional prerequisite. * * *

* * * [W]e think a reading of the two sections together [§ 2000e–5(a) and § 2000e–5(e)] means only that the Commission must be given an *opportunity* to persuade before an aggrieved person may resort to court action. See Stebbins v. Nationwide Mut. Ins. Co., 382 F.2d 267 (4th Cir. 1967); Mickel v. South Carolina State Employment Serv., 377 F.2d 239 (4th Cir. 1967). * * *

However unclear the statute and its history are with respect to the jurisdictional problem at hand, the policies and purposes of the Act are clearly discernible. There can be no doubt that Congress intended to attack the problem of discriminatory employment practices by first seeking voluntary compliance by the nation's employers. But neither can there be any doubt that Congress intended the remedies provided to be timely and effective. * * * To give ample scope to the policy in favor of voluntary compliance, we have held, and now affirm, that the Commission can not be bypassed entirely. [cases cited] * * *. To give ample scope to the policy in favor of timely remedial action, we now hold that the individual aggrieved may file a suit in the district court when he has received the statutory notice from the Commission and that he need not await an actual attempt by the Commission to achieve voluntary compliance [cases cited] * * * 405 F.2d at pp. 648–649, 651–652.

10. Since several well reasoned opinions have held that civil suit may be brought even though the EEOC has determined that reasonable cause does not exist, see, Beverly v. Lone Star Lead Construction Corp., *supra;* Flowers v. Local No. 6, Laborers International Union of North America, *supra;* and since a finding of reasonable cause is preliminary to the Commission's attempt to secure voluntary compliance, see § 2000e–5(a), it follows that the inability of the Commission to even initiate its conciliation attempt is not a bar to the instituting of a civil suit. See, Dent v. St. Louis-San Francisco Railway, *supra;* Johnson v. ITT-Thompson Industries, Inc. 323 F.Supp. 1258 (N.D.Miss.W.D.1971).

This eminently sound view takes on even more persuasiveness when considered in conjunction with the frequent judicial observation that the EEOC is an understaffed and overworked agency which is often unable to assist the parties in seeking conciliation within the statutory period. See, Johnson v. ITT-Thompson Industries, Inc., *supra*; Beverly v. Lone Star Lead Construction Corp; Evenson v. Northwest Airlines, Inc., *supra*; Quarles v. Philip Morris, Incorporated, 271 F.Supp. 842 (E.D.Va. 1967).[11] Defendants are therefore not entitled to relief on the basis of their third claim.

## IV

Defendants next argue that plaintiff's suit should be dismissed for his failure to comply with the statute of limitations provision of § 2000e–5(e).[12] Specifically, defendants assert that the subsection in question requires the plaintiff to have filed his suit within sixty days of the date he filed his charges with the EEOC. In the present case plaintiff brought his suit nearly eight months from the date he filed his charge, but within thirty days of the date the Commission issued its notice of a right to sue. Therefore, under defendants' view, plaintiff's suit should be dismissed.

■ Again we are not persuaded by defendants' argument. Their interpretation runs against the plain language of the subsection, the spirit of the Act and the reported case law. The language of the subsection clearly contemplates the situation that where the EEOC is unable to achieve the voluntary compliance of the respondent " * * * the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent * *." Many courts have adopted this interpretation of § 2000e–5(e). See, Miller v. International Paper Co., *supra*; Culpepper v. Reynolds Metals Company, 421 F.2d 888 (5th Cir. 1970); International Brotherhood of Electrical Workers, Local Union No. 5 v. Equal Employment Opportunities Commission, 398 F.2d 248, 261 n. 6 (3rd Cir. 1968); Mondy v. Crown Zellerbach Corp., 271 F.Supp. 258, 261 (E.D.La.1967), rev'd. on other grounds sub nom. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968); Ward v. Firestone Tire & Rubber Co., 260 F.Supp. 579 (W.D.Tenn. W.D.1966); Antonopulos v. Aerojet-

11. In *Quarles, supra*, after noting that the EEOC had a severe lack of trained personnel and that plaintiffs had done everything within their power to exhaust their administrative remedies, the Court held, in words that are applicable to our situation, that:

The plaintiff is not responsible for the acts or omissions of the Commission. He, and the members of his class, should not be denied judicial relief because of circumstances over which they have no control. The plaintiff exhausted administrative remedies and satisfied the requirements of the Act by filing a complaint with the Commission and awaiting its advice. He is not required to show that the Commission has endeavored to conciliate. To insist that he do so, would require him to pursue an administrative remedy which may be impossible to achieve. If the Commission makes no endeavor to conciliate, the remedy is ineffective and inadequate. 271 F.Supp. at pp. 846–847.

It might also be noted that § 2000e–5 (e) further provides that:

"Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (b) of this section or the efforts of the Commission to obtain voluntary compliance."

There is no indication in the record before the Court that the defendants attempted to take advantage of this provision by requesting the Court, in its discretion, to stay the present suit in order to allow the EEOC time to complete its voluntary compliance efforts. Even in the absence of the reasons set forth above, therefore, defendants must be deemed to have waived their right to raise this administrative exhaustion argument because of their failure to comply with this statutory provision.

12. See, n. 9, *supra*.

General Corporation, 295 F.Supp. 1390 (E.D.Calif.1968).

The logical inconsistencies of defendants' view was very clearly noted in Miller v. International Paper Company, 408 F.2d 283 (5th Cir. 1969), a case which, on its facts, was nearly identical to the one at bar. In that case five black employees of defendant company filed charges with the Commission on December 12 and 28, 1966. On June 9, 1967, within thirty days after the EEOC notified them that voluntary compliance had not been obtained, they filed a civil suit in the District Court for the Southern District of Mississippi. The District Court granted defendant's motion for summary judgment. See, 290 F.Supp. 401 (S.D.Miss.S.D.1967). The court held, in part, that § 2000e–5(e) was not a statute of limitation but was instead "a time built in the statute as a condition precedent to the exercise of the right therein created" and that this right had to be exercised within sixty days from the filing of charges with the Commission.

The Court of Appeals reversed, observing that the District Court's interpretation of the subsection was logically untenable for the following reasons:

> Since by the explicit terms of [§ 2000e–5(e)] the EEOC has up to sixty days to attempt conciliation, the limitation period applicable to the complainant could in no event be sixty days after the filing of charges with the EEOC. By stacking the thirty-day post-notice period on top of the sixty-day conciliation period it would not be completely unreasonable to argue that the applicable limitation period is ninety days

from the filing of the charges. But even that construction is untenable. Suppose, for example, a party files a charge with the EEOC and the latter, after holding the charge for exactly sixty days, mails notice of failure to effect voluntary compliance; the charging party receives the notice two days after mailing and then on the thirtieth day thereafter files suit in the district court. Here, every term of the statutory provision has been complied with and yet, if the aggregated periods fixed the time within which suit must be filed, the charging party would be two days too late. This logical discrepancy is a clear portent that the two time periods provided in [§ 2000e–5(e)] were not intended to apply as an aggregation.

The Court then held that " * * * the thirty-day limitation period applicable to charging parties under [§ 2000e–5(e)] does not begin to run until notice of the failure to achieve voluntary compliance has been sent by the EEOC and received by the aggrieved person." See, 408 F.2d at pp. 285–286, 287.

The Court adopts this holding in its entirety except insofar as it suggests the EEOC must be allowed sufficient time to complete its conciliation procedures. As discussed above in Part III of this opinion, it is our belief that both the language of the statute and the policy of Title VII dictate that plaintiff is entitled, upon request, to his notice of a right to sue at any time after sixty days have elapsed from the time he files a charge with the EEOC. This right is in no way dependent on the status of the Commission's conciliation efforts in his behalf.[13]

13. The policy reasons behind our holding were well enunciated by Chief Judge MacBride in Antonopulos v. Aerojet-General Corporation, 295 F.Supp. 1390, supra, whose views we hereby adopt:

Plaintiffs in this case submitted their grievance to the Commission. They patiently waited while the Commission ostensibly attempted conciliation. The conciliation period extended longer than the minimum time allotted by statute. When the Commission informed them

that conciliation had failed, they brought their suit within the thirty days specified by the Commission. They could have brought suit much earlier, and they should not be penalized now for giving the Commission extra time to attempt a voluntary settlement. That would be directly contrary to the Congressional emphasis on conciliation.

This Court recognizes that out-of-court settlements of Title VII charges,

For these reasons defendants are not entitled to relief on this ground.

### V

As a final ground in support of their motions to dismiss the complaint, defendants assert that the charge filed by the plaintiff with the EEOC was untimely within the meaning of § 2000e–5(d).[14] In his complaint plaintiff alleged that unlawful employment practices were practiced against him and members of his class in August, 1967, when he applied for admission to defendant Union and for employment with defendant Limbach and was refused "solely because of his race and color." (Complaint, paragraphs 9 and 10) He further alleged that the test administered by defendant Joint Apprenticeship Council in September, 1967, was "unrelated to the job of plumber" and was used by the defendants, in concert, as a " * * * device to exclude plaintiff from the apprenticeship program of defendant union wholly because of his race and color" and that plaintiff and other members of his class, similarly situated " * * * are now suffering and will continue to suffer irreparable injury from defendants' policy, practice and custom of discrimination against qualified persons of the Negro race * * * " (Complaint, paragraphs 11, 12 and 16) As noted above, plaintiff filed his charges with the EEOC and Ohio Civil Rights Commission on August 20, 1968.

■ It is the opinion of the Court that since the complaint before us clearly alleges an ongoing pattern of discrimination against plaintiff and his class, it is not necessary that plaintiff be in strict compliance with § 2000e–5 (d). We will instead follow a persuasive line of cases that have held that where a complaint, alleging racial discrimination, or other unfair employment practices, is filed under Title VII against employers and unions, it may not be dismissed on the grounds that it was untimely filed where " * * * the suit challenges the maintenance of an allegedly discriminatory system, rather than one isolated instance * * * such a violation [being] continuous in nature." Culpepper v. Reynolds Metals Company, 296 F.Supp. 1232, 1236 (N.D.Ga.1968), rev'd. on other grounds Culpepper v. Reynolds Metals Company, 421 F.2d 888 (5th Cir. 1970); see, accord, Banks v. Lockheed-Georgia Company, 46 F.R.D. 442, 446 (N.D.Ga. 1968); Cox v. United States Gypsum Company, 409 F.2d 289 (7th Cir. 1969); Sciaraffa v. Oxford Paper Company, 310 F.Supp. 891, 896 (D.Maine 1970); King v. Georgia Power Company, 295 F.Supp. 943, 946 (N.D.Ga.1968). It is obvious from the excerpts from plaintiff's complaint, quoted above, that he has properly plead himself within this exception to § 2000e–5(d).

Several other courts in this district have held that the type of discrimination here alleged is continuous in nature. See, Equal Employment Opportunity Commission v. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local Union No. 189, 311 F.Supp. 464, 474 (S.D.Ohio E.D.1970) (Kinneary, J.), rev'd. on oth-

---

through the process of voluntary conciliation, are much to be preferred. See, Johnson v. Seaboard Air Line Railroad Co., supra; Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969).

14. Section 2000e–5(d) of Title VII provides as follows:

(d) A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred, except that in the case of an unlawful employment practice with respect to which the person aggrieved has followed the procedure set out in subsection (b) of this section, such charge shall be filed by the person aggrieved within two hundred and ten days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

er grounds, 438 F.2d 408 (6th Cir. 1971), cert. den., 403 U.S. ——, 92 S.Ct. 77, 29 L.Ed.2d —— (1971); Dobbins v. Local 212, International Brotherhood of Electrical Workers, 292 F.Supp. 413, 446 (S.D.Ohio W.D.1968).

■ It is, of course, well settled that § 2000e et seq. did give courts jurisdiction to correct the type of discriminatory practices alleged in the present suit and to provide a remedy for the present and continuing efforts of past discrimination. See, Griggs v. Duke Power Co., 420 F.2d 1225 (4th Cir. 1970), rev'd on other grounds, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); United States v. IBEW, Local No. 38, 428 F.2d 144, 149–151 (6th Cir. 1970), cert. den. 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970); Marquez v. Omaha District Sales Office, Ford Division, 440 F.2d 1157, 1159–1160 (8th Cir. 1971); Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245, 248–249 (10th Cir. 1970), cert. den., 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971); United States v. Dillon Supply Company, 429 F.2d 800 (4th Cir. 1970); Robinson v. Lorillard Corporation, 444 F.2d 791 (4th Cir. 1971). And, as noted earlier, the Supreme Court has directly held that Title VII prohibits the use of intelligence tests that operate in a racially exclusionary fashion and which tend to perpetuate "the status quo of prior discriminatory employment practices" and which are not job-related. Griggs v. Duke Power Co., supra, 401 U.S. at pp. 429, 430–431, 91 S.Ct. at p. 853.

Since the complaint clearly alleges that the defendants have continually employed a testing device whose use successfully excludes blacks from the profession of plumbing, in direct contravention of the law of this land, see Griggs v. Duke Power Co., supra, plaintiff is entitled to his day in court. It should be added that Griggs, supra, also directly held that it is not dispositive that employers or unions lacked specific discriminatory intent if the effect of such tests is to exclude recognizable groups of employees on grounds declared invalid

and unacceptable by Title VII of the Civil Rights Act of 1964. Id. pp. 432, 437, 91 S.Ct. 849. If it should later develop at trial that plaintiff is unable to support his contention that the discrimination here alleged is in fact of an on-going and continuous type, defendants' motions to dismiss on § 2000e–5(d) grounds may be renewed at that time. See, King v. Georgia Power Company, supra. But plaintiff should not be denied at this stage of the proceedings an opportunity to prove his allegations involving a continuing pattern of discrimination and the use of intelligence tests which exclude blacks on a basis unrelated to job performance. See, Sciaraffa v. Oxford Paper Company, supra. Accordingly, the Court holds that the charges filed with the EEOC and deferred to the Ohio Civil Rights Commission on August 20, 1968, furnish a sufficient foundation for the action now before the Court.

The Court is aware that the Sixth Circuit has ruled that in certain Title VII cases, the statute of limitations is to be strictly construed. See, Goodman v. City Products Corp., Ben Franklin Division, 425 F.2d 702 (6th Cir. 1970). In Goodman, supra, the Court affirmed the dismissal by the trial court of a suit brought thirty-one days after plaintiff's receipt of the Notice of a Right to Sue issued by the EEOC. However, that case was decided squarely on § 2000e–5(e) grounds and does not necessarily extend to the § 2000e–5(d) situation now before the Court. The limitations period applicable to subsection 2000e–5(e) situations is more nearly typical of most pleading situations which arise under the Federal Rules of Civil and Appellate Procedure, in which the time to plead begins to run upon the occurrence of a specific act or acts. There are valid reasons for such limitations but those considerations should not be taken as controlling the subsection 2000e–5(d) situation, which is somewhat atypical and which frequently involves allegations of an on-going and continuous pattern of employment discrimination. There should be at least an opportunity for plaintiff to prove

that the alleged discrimination is of a continuous and on-going variety.

We believe this view is in accord with the broad view the Sixth Circuit has taken in other Title VII cases involving procedural technicalities. Our Circuit Court has established, as principles, that Title VII is not to be narrowly construed, Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission, 418 F.2d 355, 358 (6th Cir. 1969) and that " * * federal courts should not allow procedural technicalities to preclude Title VII complaints * * * " see, Tipler v. E. I. duPont deNemours and Co., 443 F.2d 125, 131 (6th Cir. 1971). Other Sixth Circuit cases have also adopted a broad view of Title VII cases. See, United States v. IBEW, Local No. 38, 428 F.2d 144 (6th Cir. 1970), cert. den. 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970); Bowaters Southern Paper Corporation v. Equal Employment Opportunity Commission, 428 F.2d 799 (6th Cir. 1970). Also see, Austin v. Reynolds Metals Company, 327 F.Supp. 1145 (E.D. Va.1970); Mack v. General Electric Company, 329 F.Supp. 72 (E.D.Pa.1971).

This view is also in accord with the intention and purpose expressed by Congress in enacting Title VII. Although there may be disputes over the legislative history, involving minor procedural matters, there can be no cavil that the ultimate remedial purpose of Title VII was to eliminate the practice of job discrimination on the basis of race, religion or sex. The view of this Court was elo-

quently expressed by the Fifth Circuit in Culpepper v. Reynolds Metal Company, *supra,* where the court, per Tuttle, C. J., wrote:

> Racial discrimination in employment is one of the most deplorable forms of discrimination known to our society, for it deals not with just an individual's sharing in the "outer benefits" of being an American citizen, but rather [with] the ability to provide decently for one's family in a job or profession for which he qualifies and chooses. Title VII of the 1964 Civil Rights Act provides us with a clear mandate from Congress that no longer will the United States tolerate this form of discrimination. It is, therefore, the duty of the courts to make sure that the Act works, and the intent of Congress is not hampered by a combination of a strict construction of the statute and a battle with semantics.
> 421 F.2d at p. 891.

Because of our general view of the intent and purpose of Title VII, we respectfully decline to follow several recent cases which have applied a more narrow interpretation of § 2000e–5(d).[15]

Accordingly, for the reasons as set forth above, the motions to dismiss of defendants Limbach Company, Local 189 of the Plumbers & Steamfitters International Union, AFL–CIO, and the Joint Apprenticeship Council of Local 189, Plumbers & Steamfitters International Union, are found to be without merit and they are hereby denied.

15. See, Love v. Pullman Company, *supra,* which is discussed at pp. 9–10 of this opinion. Also see, Voutsis v. Union Carbide Corporation, 321 F.Supp. 830 (S.D. N.Y.1970); Torockio v. Chamberlain Mfg. Co., 328 F.Supp. 578 (W.D.Pa. 1971). *Voutsis, supra,* involved a situation where plaintiff's charge was pending simultaneously before both the New York State Division of Human Rights and the EEOC. The District Court held that plaintiff's charge with the EEOC, filed two days after she had filed with the state agency, was void for her failure to comply with § 2000e–5(b), and further held that the earlier order of the state unit was entitled to *res judicata* effect by the EEOC, as plaintiff had elected her remedy. The court in *Voutsis,* on rehearing, adopted essentially a *Love* approach to § 2000e–5(d) which we have earlier rejected. The court in *Torockio, supra,* rested its holding, dismissing plaintiff's class action Title VII suit, on the twin grounds of non-compliance with § 2000e–5 (d) and (e). From the facts presented in that opinion, this Court cannot determine whether *Torockio* would have been similarly decided on § 2000e–5(d) grounds alone. To the extent *Torockio* followed the holding of Goodman v. City Products Corporation, *supra,* on the § 2000e–5(e) statute of limitations, we are in agreement with that decision.

Defendants shall file responsive pleadings to the complaint within twenty (20) days from the entry of this opinion and order.

It is so ordered.