Margaret KOHN, Individually and on behalf of all other persons similarly situated, Plaintiff,

v.

ROYALL, KOEGEL & WELLS, Defendant.

No. 72 Civ. 2705.

United States District Court, S. D. New York.

March 5, 1973.

516

Harriet Rabb, Carol Bellamy, George Cooper, New York City, for plaintiff.

Royall, Koegel & Wells, pro se; Norman Ostrow, Paul M. Hopkins, New York City, of counsel.

LASKER, District Judge.

During her second year in law school, plaintiff, Margaret Kohn, applied to Royall, Koegel & Wells, a large New York law firm, for a summer job. The latter interviewed her at the law school on November 17, 1970, but did not invite her to the firm for further interviews and did not extend her an offer of employment. On May 27, 1971, Kohn filed a complaint with the New York City Commission on Human Rights alleging that the firm's failure to hire her resulted from sex discrimination. On November 19, 1971, she filed a complaint with the Federal Equal Employment Opportunities Commission ("EEOC" or "Commission"). Kohn finally brought suit in this court on June 26, 1972.

The firm has moved to dismiss or, in the alternative, for summary judgment dismissing the complaint on the ground that this court lacks jurisdiction because Kohn's complaint with the EEOC was not timely. Kohn moves for a class action determination.

## I. MOTION TO DISMISS.

Section 706(d) of Title VII of the 1964 Civil Rights Act, 78 Stat. 259, as amended, 42 U.S.C. § 2000e–5(e), required, as a jurisdictional prerequisite to federal suits alleging job discrimination, the filing of a complaint with the EEOC within a specified period of time. Since New York City has a commission which handles charges of discriminatory employment practices, the statutory time limit which is applicable to this case [1] is 210 days from the act complained of.[2] Since Kohn filed her EEOC complaint on November 19, 1971, it would normally be timely only if the act complained of occurred no earlier than April of that year.

Kohn argues that her EEOC complaint was timely for the following reasons: 1) The occurrence which is the basis of her complaint happened in April, 1971, or later; and 2) her complaint alleges a continuing violation.

---

**1.** In 1972, section 706(d) was amended to extend the time for filing with the EEOC. 42 U.S.C.A. § 2000e–5(e) (Supp.1973). The parties do not claim that the new provision applies.

**2.** Section 706(d) required filing an EEOC charge within 210 days of the act complained of or 30 days of receipt of notice that the local agency had terminated its proceedings, whichever was earlier. Since the local agency proceedings continued well beyond the 210 day period, the former time limit applies.

The first ground is clearly without merit. During her interview by the firm on November 17, 1970, Kohn was informed that, if the firm was interested in her application, it would notify her by letter within the following week. (Affidavit of John B. Loughran.) Furthermore, Robert A. Lindgren, a member of the firm, has submitted an affidavit documenting the practice commonly followed by large New York firms of conducting interviews and extending offers for the following summer by the 15th of December. (Affidavit in support of motion to dismiss.) It is extremely likely that, as would most well informed law students, Kohn concluded from the firm's failure to contact her by the end of the year that they did not intend to extend her an offer. At any rate, her common sense must have intimated that fact to her well before the following April. Accordingly, unless the basis of Kohn's complaint is a continuing violation, rather than an isolated act, it must be dismissed as untimely filed.

We agree with defendant that, ordinarily, refusal to hire is not a continuing violation. Molybdenum Corp. v. EEOC, 457 F.2d 935 (10th Cir. 1972). However, where, as here, the complaining party alleges that the refusal of employment results from an ongoing pattern and practice of discrimination and seeks to represent the entire class of persons allegedly discriminated against, his or her individual grievance provides merely the springboard from which to investigate the employer's alleged continuing violation with respect to the class as a whole. The refusal to hire, which is isolated as to the individual, forms one item in an ongoing series of violations with respect to the class, the many elements of which are linked by their common source—employer discrimination. Defining continuing violation in this fashion does not thwart the purpose of the 210 day statute of limitations that the EEOC should have an opportunity to investigate and seek voluntary compliance and "should only be required to investigate fresh discriminatory acts." Hecht v. Cooperative for American Relief Everywhere, Inc., 351 F.Supp. 305, 310 (S.D.N.Y.1972). The discriminatory pattern of which plaintiff complains is by definition "fresh," since it is alleged to be continuing to this very day. This result is not a perversion of the class action device permitting an individual to revive a time barred claim by asserting the grievances of others.[3] Rather, it is a way of defining the jurisdiction-conferring concept of continuing violation[4] so as to carry out the underlying purposes of the Act.

Title VII contemplates the elimination of the major social ill of job discrimination through suits by individ-

---

3. Although the statute of limitations is not a defense against a claim of continuing violation, the concept of laches is available to protect defendants from prejudicial delay. The firm, however, cannot claim to have been prejudiced since they were given notice of the claim against them by the filing of a timely complaint before the New York City Commission on Human Rights on May 27, 1971.

4. Undeniably, existence of a continuing violation tolls the statute of limitations, satisfying the jurisdictional prerequisite of timely filing of EEOC charges. *See, e. g.*, Bartmess v. Drewrys U.S.A., Inc., 444 F.2d 1186, 1188 (7th Cir.), cert. denied, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed. 2d 252 (1971); Cox v. United States Gypsum Co., 409 F.2d 289 (7th Cir. 1969); Watson v. Limbach Co., 333 F. Supp. 754, 765 (S.D.Ohio 1971); Sciaraffa v. Oxford Paper Co., 310 F.Supp. 891, 896 (D.Maine 1970); Moreman v. Georgia Power Co., 310 F.Supp. 327 (N.D. Ga.1969); Hutchings v. United States Industries Inc., 309 F.Supp. 691 (E.D. Texas 1969), rev'd on other grounds, 428 F.2d 303 (5th Cir. 1970); Culpepper v. Reynolds Metal Co., 296 F.Supp. 1232, 1236 (N.D.Ga.1968), rev'd on other grounds, 421 F.2d 888 (5th Cir. 1970); King v. Georgia Power Co., 295 F.Supp. 943, 946 (N.D.Ga.1968).

uals acting as private "attorneys general".[5] Jenkins v. United Gas Corp., 400 F.2d. 28, 31–32 (5th Cir. 1968); *cf.* Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401–402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). This method of enforcement makes an individual grievance the spearhead of an attack of larger proportions, since the individual claimant takes on the mantle of the state in seeking to rectify wrongs against himself and others.[6] Accordingly, an individual's claim, when it results from a pervasive discriminatory attitude, cannot be considered in isolation. As was held in Watson v. Limbach Co., 333 F. Supp. 754 (S.D.Ohio 1971), a case which is exactly on point, the statute requires "at least an opportunity for plaintiff to prove that the alleged discrimination is of a continuous and ongoing variety."

*Id.* at 766–767. *See also* Jamison v. Olga Coal Co., 335 F.Supp. 454, 458–459 (S.D.W.Va.1971); [7] Culpepper v. Reynolds Metal Co., 296 F.Supp. 1232, 1235–1236 (N.D.Ga.1968), rev'd on other grounds, 421 F.2d 888 (5th Cir. 1970).[8]

■ We recognize that the notion of continuing violation contains some danger of abuse. To prevent its being used to inflate the importance of frivolous or unrepresentative claims, an individual plaintiff who alleges a continuing violation against a class of persons should be required to have a clearly demonstrable stake in the class position, whether or not the case is brought as a class action.[9] Kohn has met this requirement.

Accordingly, defendant's motion to dismiss or for summary judgment dismissing the complaint is denied.

---

5. As a result, dismissal of Title VII suits for procedural irregularities is not favored, since the statutory scheme contemplates achievement of its goals through the largely informal efforts of laymen. *See* Voutsis v. Union Carbide Corp., 452 F.2d 889 (2d Cir. 1971).

6. As was stated in Hutchings v. United States Industries, Inc. 428 F.2d 303, 311 (5th Cir. 1970), "once the judicial machinery has been set in train, the proceeding takes on a public character in which remedies are devised to vindicate the policies of the Act, not merely to afford private relief to the employee."

7. In *Jamison*, the court said:
"In asserting that the discriminatory conduct complained of occurred prior to the effective date of the Act and more than 90 days before plaintiff filed his charge with the EEOC, defendants completely ignore the fact that plaintiff Jamison's charge before the EEOC involved two separate areas of discrimination, one general and one specific. While it is true that the specific charge of discrimination with respect to the promotion of Jamison to the position of motorman apparently relates to conduct on the part of the defendants prior to the effective date of the Civil Rights Act of 1964, and to an incident occurring more than 90 days before the filing of the charge with the EEOC, nevertheless, the general charge of a de-

nial of promotions to Negroes to better jobs and the failure on the part of the defendant unions to seek redress of such discrimination is not confined to the same time period as was the specific charge. Indeed, the complaint in this action and the charge before the EEOC both allege a pattern of conduct apparently continuing to the time of filing the charge with the EEOC and beyond, which would obviously meet the requirement that the discrimination complained of must occur subsequent to the effective date of the Civil Rights Act of 1964 and that the complaint must be filed with the EEOC within 90 days of the alleged unlawful practice." 335 F.Supp. at 458.

8. If plaintiff fails to demonstrate the violation's continuous nature, the motion to dismiss can obviously be renewed. Watson v. Limbach Co., 333 F.Supp. 754, 766 (S.D.Ohio 1971); King v. Georgia Power Co., 295 F.Supp. 943, 946 (N.D. Ga.1968).

9. Of course, this requirement is met, if the plaintiff satisfies the prerequisites of Rule 23, especially Rule 23(a)(3) and (4). *Cf.* Calhoun v. Riverside Research Institute, 4 EPD ¶ 7825 (S.D.N.Y.1972); Hyatt v. United Aircraft Corp., Sikorsky Aircraft Division, 50 F.R.D. 242 (D.Conn. 1970). As discussed *infra*, Kohn's claim meets these demands.

## II. MOTION FOR A CLASS ACTION DETERMINATION.

Kohn seeks a determination that the suit may proceed as a class action on behalf of "all women qualified for legal positions at Royall, Koegel and Wells who have been or would be denied employment because of their sex." (Complaint, III, 3.) Since the requirements of Rule 23(a) and (b)(2) (Fed.R.Civ.P.) are satisfied, the motion is granted.

### A. Numerosity (Rule 23(a)(1)).

Kohn claims that the putative class contains approximately 500 women who are recent graduates of or are currently enrolled in the nation's leading law schools or are members of the bar admitted to practice in the New York area.

The firm maintains that this definition is too broad and that, properly defined, the class is not too numerous to permit joinder. In support of this proposition, it advances several arguments.

First, the firm contends that since it extends offers to only 2.6% of all applicants, if the entire proposed class actually applied, only 13 of its members could complain of failure to receive an offer. A corollary to this argument is that only rejected women applicants who can be shown to have been superior to the males hired in their place are proper members of the class.

The argument misses the point. The intended effect of Title VII is to give each applicant an equal *opportunity* to be hired. To the extent that an employer discriminates on the basis of a forbidden classification, he reduces the probability that any single member of that class will find employment with him. Discrimination makes competition for the limited number of positions more difficult for the entire class by use of a tougher standard as to all of its members. As a result, all applicants handicapped by the double standard have less opportunity for employment than persons not discriminated against. Accordingly, all are harmed, although not all could have been employed.

Second, the firm contends that the class cannot include women who will seek employment with it in the future. The case relied on, Gerstle v. Continental Airlines, Inc., 50 F.R.D. 213 (D. Colo.1970), is inapposite. There, the employer eliminated the discriminatory rule before commencement of the suit, and so no case or controversy could exist as to present and future employees. *Id.* at 217. Here, on the contrary, the discriminatory practice is alleged to be continuing, and the class properly includes future as well as past applicants who will be affected by it. Rios v. Enterprise Association Steamfitters, Local 638, 326 F.Supp. 198 (S.D.N.Y.1971); Black v. Central Motor Lines, Inc., 1 EPD ¶ 9956 (W.D.N.C.1968).[10]

10. The firm contends that the class definition is excessively broad in another respect, since Kohn cannot represent those presently employed by the firm, as she is not a member of that class. Since the firm employs only two female attorneys, the effect of this argument on numerosity is too inconsequential to warrant further discussion. However, the firm also informally requests us to strike those portions of the complaint which concern the firm's internal employment policies (Defendant's Memorandum of Law opposing class action determination at 33) for the reason that "neither plaintiff nor the class she seeks to represent are employees of defendant, and therefore are not, and could not be, affected by these alleged policies." (*Id.* at 32.) The suggestion is without merit, since the terms and conditions of employment concern applicants for employment as well as employees. An employer, especially one as well known in its field as is defendant here, develops a reputation as to its attitudes respecting the employment of women professionals which is an important factor in a potential female applicant's decision whether or not to apply to it for employment. Discriminating against women in internal employment policies limits a woman applicant's employment opportunities by reducing the number of positions in which she would reasonably be inter-

Accordingly, although Kohn's figure of 500, representing the labor pool from which the firm must draw its female employees, may be overbroad in that not all persons in the pool are necessarily interested in employment with the firm, it is reasonable to conclude that the number of persons who are interested is sufficiently large to justify class treatment. In 1970 alone (the year that Kohn applied for a position), the firm received 78 applications from women. (Affidavit of Robert Lindgren opposing motion for a class action determination, par. 20.) Since the firm is receiving an increasing number of applications from women (*id.* at par. 22), it is clear that the number of women applicants eligible for membership in the class exceeds that which would permit joinder of all members. Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972) (district court ordered to allow class action for a class of seventy).

## B. Common Question of Law or Fact (Rule 23(a)(2)).

The firm contends that there are no questions of law or fact common to the class or, alternatively, that Kohn's claims are not typical of the claims of the class, because "[s]ince the process of selection is and must be to a great extent selective, the number of variables involved is infinite and the questions of fact involved are entirely unique in each case." (Defendant's Memorandum of Law opposing class action motion at 14.)

There is no doubt that hiring a professional requires weighing many subjective factors contributing to the applicant's qualifications *as a whole,* above and beyond the more objective academic qualifications. We cannot agree, however, that this fact immunizes dis-

criminatory practices in professional fields from attack on a class basis. See Hecht v. Cooperative for American Relief Everywhere, Inc., 351 F.Supp. 305 (S.D.N.Y.1972), which involved female employees at the executive level. The common question in both professional and non-professional employment situations is not whether one individual is better qualified than another, but whether that individual is considered less qualified, not because of his or her own worth, but because of discrimination forbidden by Title VII. *Hecht, supra,* at 312. Put another way, although a law firm is undoubtedly free to make complex, subjective judgments as to how impressive an applicant is, it is not free to inject into the selection process the *a priori* assumption that, as a whole, women are less acceptable professionally than men.

## C. Representative Parties' Claims Typical of the Claims of the Class (Rule 23(a)(3)).

Kohn, whose academic qualifications are not disputed, claims that she was denied employment because of her sex. Therefore, her claim is exactly typical of the claims of the class.

## D. Fair and Adequate Protection of the Class' Interests (Rule 23(a) (4)).

Kohn is represented by counsel experienced in this area of the law and can be expected diligently to represent the interests of the class.

## E. Generally Applicable Grounds for Injunctive or Declaratory Relief (Rule 23(b)(2)).

As discussed above, the essential allegation, here, is that the firm discriminates against all women applicants in its

ested. Further, by non-advancement an employer artificially limits the number of women it employs. As a result, an applicant has standing to complain of internal employment practices.

The firm also suggests that the fact that no one has come forward to join

Kohn's suit indicates that no class of interested persons exists. We disagree. It is understandable and, in fact, predictable that fear of being labelled a troublemaker would deter most potential class members from sticking their necks out unnecessarily.

hiring procedure.. If this allegation can be sustained—a matter on which we express no view—the class would be entitled to injunctive and declaratory relief to remedy past and prevent future discrimination. Accordingly, the requirements of Rule 23 are satisfied.

*F. General Considerations.*

Finally, the firm contends that, even if the elements of a class action are present, it would be inequitable to allow the suit to proceed in class form, because Kohn's claims are devoid of merit.

As noted by defendant itself, the requirement that a plaintiff seeking a class action determination demonstrate likelihood of success on the merits has not been uniformly accepted. Sunrise Toyota, Ltd. v. Toyota Motor Co., Ltd., 55 F.R.D. 519, 534 (S.D.N.Y.1972). Such a showing should not be necessary in Title VII suits, or should be required only to the extent of screening out cases which are clearly frivolous, because "class actions are favorably viewed by the courts as a means of seeking redress for civil rights violations—the class action is the method which Congress has established for the vindication of the public interest through private actions." [11] Gerstle v. Continental Airlines, Inc., 50 F.R.D. 213, 216 (D.Colo.1970) (footnote omitted). As the Court of

Appeals for the Seventh Circuit said in Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719 (7th Cir. 1969): "A suit for violation of Title VII is necessarily a class action as the evil sought to be ended is discrimination on the basis of a class characteristic, *i. e.,* race, sex, religion or national origin." *See also* Jenkins v. United Gas Corp., 400 F.2d 28, 33 (5th Cir. 1968); Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968). The firm does not cite any case which imposed a prerequisite demonstration of probable success on a civil rights suit [12] in which a class determination was sought, and we decline to do so here.

At any rate, it is not clear that Kohn's claim is so insubstantial that it would not pass a reasonable threshold test. While we do not believe such a test is applicable, we have considered the question, because defendant has raised the subject. Having studied with care the statistics and arguments submitted by the parties, we note that the approaches of both raise interesting and often difficult questions. However, if a threshold showing were necessary, as defendant contends, we find that it has been made. It goes without saying that our holding indicates no view as to the merits of the case.

11. The many securities cases cited by the firm must be distinguished from other class actions, because of the heightened possibility of prejudice that exists in such cases. As the court said in Dolgow v. Anderson, 43 F.R.D. 472, 501 (E.D.N.Y. 1968) : "So much of the stock market depends upon faith and reputation that the Court should be reluctant to lend its weight to any unnecessary publicity in connection with a pending lawsuit." On the other hand, we do not think that the harm which the firm stands to suffer, here, from such adverse publicity as may accompany this motion is greater than that which is incidental to the ordinary class action determination.

12. None of the civil rights cases cited by the firm are apposite. In Chance v. Board

of Examiners, 330 F.Supp. 203 (S.D.N.Y. 1971), aff'd, 458 F.2d 1167 (2d Cir. 1972), consideration of the class action motion was, indeed, deferred until after the decision on preliminary injunctive relief, but merely to allow defendants, on consent of all parties, more time to answer the motion. 330 F.Supp. at 206, n. 8. Calhoun v. Riverside Research Institute, 4 EPD ¶ 7825 (S.D.N.Y.1972), denied a class action determination for failure to fulfill the requirements of Rule 23, which we have already found to have been met here. Black v. Central Motor Lines, Inc., 1 EPD ¶ 9956 (W.D.N.C.1968), made the class action order conditional on plaintiff's demonstrating that discrimination had occurred after the effective date of Title VII as a basis for the application of the statute.

Furthermore, it is unlikely that a class action determination will prejudice or injure the defendant. If it should prevail against the class action, the broad vindication of its policies would surely discourage subsequent suits for discrimination, although it would not make them *res judicata*. On the other hand, if it lost against Kohn alone, we are certain it would abide by the spirit of the individual ruling, even though it would not be subject to sanction with regard to anyone other than Kohn.

Defendant's motion to dismiss is denied. Plaintiff's motion for a class action determination is granted.

It is so ordered.

### ON MOTION FOR REARGUMENT AND FOR CERTIFICATION

By memorandum filed March 7, 1973, we denied Royall, Koegel & Wells' motion to dismiss and granted Kohn's motion for a class action determination. The firm now presents a motion which it designates as a motion for reargument. It also moves for certification pursuant to 28 U.S.C. § 1292(b) to permit an immediate appeal of the denial of its motion to dismiss.

### I.

■ The first motion presented is rejected as a motion to reargue. General Rule 9(m) of the rules of this court permit motions to reargue only where it is claimed that the court overlooked matters in issue or controlling decisions. No such claim is made here. The application put before us is rather that the court "reconsider the following two points:

"1. Whether the claim of the plaintiff is typical of the claims of the persons who comprise the class the plaintiff seeks to represent; and

"2. Whether the plaintiff has standing to complain of internal employment practices when she was never employed by defendant and does not seek such employment."

Ordinarily, especially where, as here, the motion was not timely made, we would deny it without further action. We believe, however, that the first point which we are asked to reconsider indicates a clear misunderstanding of the import of our earlier decision and the material in this memorandum is intended to clarify that ruling.

In our earlier decision, we did not hold, as claimed by the firm, that the class action determination brought Kohn's otherwise time-banned claim within the statute of limitations, but, rather, we found that Kohn's claim was itself timely, because it alleged a continuing violation. As we stated therein, an allegation of a continuing violation would have conferred jurisdiction on the EEOC, even if Kohn had not sought to represent other aggrieved persons.

The firm is, of course, correct that Kohn must have standing herself in order to bring a representative suit. Our earlier decision, by which we abide, found that she did and that, as a result (since her claims were typical in other respects), Kohn could represent the class.

■ ■ We turn to defendant's second ground for its motion, namely, that Kohn does not have standing to complain of the firm's internal employment practices, because 1) she was never employed by it and 2) she does not now seek employment with it. The first point, that only an employee has standing to challenge internal employment practices, is not without its conceptual difficulties and has never been passed on in this Circuit.[1] The problem, how-

---

1. The cases from other circuits relied on by the firm (Huff v. N. D. Cass Co., 468 F.2d 172 (5th Cir. 1972); Heard v. Mueller Co., 464 F.2d 190 (6th Cir. 1972); and White v. Gates Rubber Co., 53 F.R.D. 412 (D.Colo.1971)) do not support its

ever, has been considered by the Court of Appeals for the Fifth Circuit in Carr v. Conoco Plastics, Inc., 423 F.2d 57 (5th Cir.), cert. denied, 400 U.S. 951, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970), which found that a class of applicants for employment had standing to challenge a prospective employer's allegedly discriminatory internal employment practices. The court said:

> "The plaintiffs here seek equal opportunity for employment, and charge defendants with discriminating against them on account of race. There can be no serious question but that plaintiffs have the right to bring the action for themselves and others similarly situated. Envisioning an equal opportunity for employment plaintiffs have the correlated right to enjoy nondiscriminatory practices within the plant.

> It is foolhardy to say that once plaintiffs have removed racial discriminatory practices at the door, they are required to start anew in order to remove those that exist on the inside. Such a practice would result in a multiplicity of suits and a waste of time and money for all interested parties." *Id.* at 65.

We agree with the reasoning of the Fifth Circuit and adopt its approach.

As to the firm's contention that Kohn does not have standing to bring such a challenge because she no longer seeks employment with the firm, there is nothing properly in the record which supports this finding[2] and accordingly it must be rejected.

## II.

The firm wishes to take an immediate appeal from our order denying its motion to dismiss. Certification of the question based on that order[3] would be

---

contention that only an employee has standing to challenge internal employment practices. They involve discharged employees who were not eligible for or were not seeking reinstatement and, therefore, were not potential employees of the defendant. Kohn, like the plaintiffs in Carr v. Conoco Plastics, Inc., 423 F.2d 57 (5th Cir.), cert. denied, 400 U.S. 951, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970), asserts that, as an applicant for employment, she has standing to challenge internal employment practices.

2. This ground for reargument is based on a statement contained in the affidavit of Norman Ostrow in support of the motion to amend the order, par. 7, which says:

> "During the proceedings which occurred prior to the filing of the complaint herein, I was informed by Ms. Kohn's attorney that Ms. Kohn did not seek employment by Royall, Koegel & Wells and would not accept such employment if it were offered."

This statement has no relevance to the motion to amend and is obviously addressed to the motion to reargue. General Rule 9(m) of the rules of this court provides that in support of a motion to reargue, which the motion before us purports to be, "[n]o affidavits shall be filed by any party unless directed by the court." To allow the role to be circumvented in this fashion would destroy its effectiveness whenever a motion to reargue is coupled with another motion. Therefore, we decline to consider this statement as properly part of the record before us. Furthermore, unless Kohn's attorney was authorized by her to make such a statement on her behalf, it would not constitute an admission on her part.

3. Defendant wishes to certify the following question to the Court of Appeals:

> "Whether the allegation by Ms. Kohn that the refusal of defendant to offer her employment resulted from an ongoing pattern and practice of discrimination and the designation by Ms. Kohn of her action as a class action are sufficient, standing alone, to bar dismissal of the complaint for lack of subject matter jurisdiction since Ms. Kohn failed to file a complaint with the Equal Employment Opportunity Commission within the statutory period." Memorandum in Support of defendant's motion to amend at 2.

Even if the firm's motion to amend the order were not denied on the grounds discussed in the opinion, we would decline to certify this question since it does not accurately state the holding of our earlier

proper only if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation" (28 U.S.C. § 1292(b)).

Assuming, *arguendo*, that denial of the motion to dismiss involves a "question of law as to which there is substantial ground for difference of opinion" and that "an immediate appeal . . . may materially advance the ultimate termination of the litigation", the motion must nonetheless be denied, because the question involved is clearly not "controlling", as that term has been interpreted.

The decisions in this Circuit leave no doubt that the phrase "controlling question of law" is not equivalent merely to a question of law which is determinative of the case at hand. To the contrary, such a question is deemed controlling only if it may contribute to the determination, at an early stage, of a wide spectrum of cases. In Brown v. Bullock, 294 F.2d 415, 417 (2d Cir. 1961), for example, Judge Friendly, writing for the Court en banc stated that a § 1292 (b) appeal was appropriate, not only because of the possibility of avoiding a lengthy trial, but because of its "precedential value for a large number of other suits." *See also* Atlantic City Elec. Co. v. General Elec. Co., 337 F.2d 844 (2d Cir. 1964); Sperry Rand Corp. v. Bell Telephone Laboratories, Inc., 272 F.2d 29 (2d Cir. 1959); Gottesman v. General Motors Corp., 268 F.2d 194 (2d Cir. 1959); Ratner v. Chemical Bank New York Trust Co., 309 F.Supp. 983 (S.D. N.Y.1970); Leighton v. New York, S. & W. R. R. Co., 306 F.Supp. 513 (S.D. N.Y.1969). Although the question presented here is intellectually intriguing and its determination favorably to the

firm would save it considerable trouble and expense, we are bound to abide by the established policy of the Circuit against piecemeal appeals (Union Can Co. v. Isbrandtsen, 416 F.2d 96 (2d Cir. 1969); Petition of World Tradeways Shipping, Ltd., 373 F.2d 860 (2d Cir. 1967)).

Accordingly, defendant's motions for reargument of the class action motion and to amend the court's order to permit § 1292(b) certification are denied.

It is so ordered.

opinion. As discussed above, that decision held that Kohn filed her complaint with the EEOC within the statutory period since running of the statute of limitations was tolled.