Madan GAUTAM, Plaintiff,

v.

FIRST NATIONAL CITY BANK, Defendant.

No. 76 Civ. 2766.

United States District Court, S. D. New York.

Dec. 22, 1976.

Madan Gautam, pro se.

Proskauer Rose Goetz & Mendelsohn, New York City, for defendant; John M. Lewis, of counsel.

## MEMORANDUM AND ORDER

CONNER, District Judge:

The subject of the above-captioned *pro se* action, instituted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, is an alleged employment discrimination unlawfully based on national origin. Plaintiff, an East Indian, founds his claim for damages and other relief upon defendant's 1974 rejection of his application for employment. Defendant has moved to dismiss, pursuant to Rule 12(b)(6) F.R.Civ.P., on the ground that the instant action is barred by the terms of Section 706(e), 42 U.S.C. § 2000e–5(e).

At the outset, it must be noted that the parties' submissions on the present motion are addressed to factual matters extending well beyond the terse recitals in the amended complaint at bar. So far as they are relevant to the issue now under contest, the parties' affidavits and exhibits will not be excluded from present consideration. Accordingly, defendant's motion, notwithstanding its label, has been effectively converted into an application for summary judgment under Rule 56 F.R.Civ.P. See Rule 12(b) F.R.Civ.P.

The standards against which such a motion must be measured are as rigorous as they are familiar. Thus, on a Rule 56 motion, a Court is obliged to resolve any

ambiguity—and to draw all reasonable inferences—in favor of the party against whom summary judgment is sought. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Moreover, as Rule 56(c) expressly prescribes, summary judgment may be granted only if "there is no genuine issue as to any material fact." Therefore, in the assay of a Rule 56 motion, it is the office of the Court not to adjudicate issues of fact but rather to ascertain only whether such issues exist. *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975); *Empire Electronics Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962). And it is the moving party's burden to demonstrate the absence of material facts genuinely in dispute. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Furthermore, a Court must take pains to assure that a claim is not lost to an uncounselled plaintiff merely because the facts that give it substance and context are not artfully disclosed. *Cf. Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Jackson v. Statler Foundation*, 496 F.2d 623, 625–26 (2d Cir. 1974).

### I.

So far as is relevant here, the undisputed facts are as follows. On May 16, 1974, plaintiff visited defendant's Professional Recruitment Office in the hope of securing a position with defendant. After a brief exchange with a personnel officer, plaintiff submitted his resume for defendant's consideration and left the premises. After the passage of several months without response from defendant, plaintiff once again submitted his resume through a mailed application for employment. The application was received by defendant's personnel office on August 7, 1974. On that same day, a letter of reply was mailed to plaintiff, advising that, "[U]pon reviewing our present personnel needs in the light of your interests and background, we have come to the reluctant conclusion that we cannot, at this point, encourage you in your employment search."

On October 18, 1974, plaintiff filed a verified complaint with the New York State Division of Human Rights, charging defendant with unlawful discrimination and citing as the basis for that charge defendant's August 7, 1974 rejection of his application for employment. On December 6, 1974, the state commission issued a "Determination and Order after Investigation," dismissing the complaint in the absence of probable cause to support plaintiff's charge that defendant's refusal to hire him constituted an unlawful discriminatory employment practice. That determination was affirmed by the New York State Human Rights Appeal Board, in a Decision and Order dated June 30, 1975 and received by plaintiff in January 1976.

On February 23, 1976, plaintiff filed with the Equal Employment Opportunity Commission [the EEOC] a charge that, in essence, echoed his complaint before the state commission; through apparent oversight, the EEOC did not notify defendant of the charge pending against it or, for that matter, of its ultimate disposition. On March 29, 1976, the EEOC issued its Determination, which consisted of the conclusions that (1) "the timeliness, deferral and all other jurisdictional requirements" under Title VII had been satisfied and (2) there was not "reasonable cause to believe that the charge" lodged by plaintiff was true. Within ninety days from receiving notification of the EEOC Determination,[1] plaintiff filed his complaint in this district.

### II.

Defendant's motion rests on the Section 706(e) prescription that,

"in 'a case of an unlawful employment practice with respect to which the person

---

1. Section 706(f)(1) provides:
   "If a charge filed with the [EEOC] * * * is dismissed by the Commission * * * the Commission * * * shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge * * * by the person claiming to be aggrieved * * *." 42 U.S.C. § 2000e–5(f)(1).

aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, [a] *charge [under 42 U.S.C. § 2000e–5] shall be filed* by or on behalf of the person aggrieved *within three hundred days after the alleged unlawful employment practice occurred,* or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier * * *." (emphasis added).[2]

As noted above, plaintiff filed his charge with the EEOC on February 23, 1976. Defendant urges that the allegedly "unlawful employment practice" for which plaintiff has sought redress from the state and federal agencies, as well as from this Court, occurred no later than August 7, 1974, with defendant's rejection of plaintiff's application for employment, *i. e.,* more than three hundred days before the filing of plaintiff's Title VII charge with the EEOC. Plaintiff counters with the assertion that the accused discrimination has continued from 1974 to the present and that the limitation bar proposed by defendant is therefore inapplicable to this case. For the reasons discussed below, this Court is impelled to the conclusion that the claim herein, however characterized by plaintiff himself, was not timely filed with the federal agency.

■ Precedent instructs us, to be sure, that a discriminatory employment practice, policy, or device that exerts a continuous force, resulting in a present impact at the time of an EEOC filing, tolls the running of the Section 706(e) limitation period and may thus preserve a Title VII claim that would otherwise be stale. See, *e. g., Egelston v. State University College at Genesco,* 535 F.2d 752 (2d Cir. 1976); *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App. D.C. 69, 478 F.2d 979 (1973); *Bartmess v. Drewrys U.S.A. Inc.,* 444 F.2d 1186 (7th

Cir.), *cert. denied,* 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971); *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515 (S.D.N.Y.1973), *appeal dismissed,* 496 F.2d 1094 (2d Cir. 1974). Indeed, the suspension of the limitation period by force of an alleged continuing discrimination is perhaps "particularly applicable in cases involving discriminatory failure to hire * * * [,] for in such circumstances, 'it would seem to be a needless, futile gesture to require [the] plaintiff to make a formal reapplication for the desired position, simply because the EEOC complaint was not filed within [180 or 300] days of the initial application.' " *Stroud v. Delta Airlines, Inc.,* 392 F.Supp. 1184, 1189 (N.D.Ga.1975), *quoting Cisson v. Lockheed-Georgia Co.,* 392 F.Supp. 1176, 1181 (N.D. Ga.1975).

■ It is equally true, however, that an isolated refusal to hire does not of its own constitute a continuing discrimination. *Molybedenum Corp. v. EEOC,* 457 F.2d 935 (10th Cir. 1972); *Kohn v. Royall, Koegel & Wells, supra,* at 518. Thus, a refusal to hire that does not "form[ ] one item in an ongoing series of violations * * * [that are] by definition 'fresh'," *Kohn v. Royall, Koegel & Wells, supra,* at 518, cannot support an invocation of the tolling theory outlined above. *Cf. Griffin v. Pacific Maritime Association,* 478 F.2d 1118, 1120 (9th Cir. 1973).

Plaintiff's own submissions on this motion establish that the grievance underlying the present action has, from the outset, resided solely in a discrete and completed instance of purported discrimination. This is not to ignore plaintiff's previous and present assertions that the discriminatory action of which he now complains has been a "continuing" violation of his civil rights. However, it is perhaps enough to note that "the insertion of the word 'continuing' in an EEOC complaint, without more, does not raise a per se claim of continuing discrimination." *Stroud v. Delta Airlines, Inc., supra,* at 1189. See *Moore v. Sunbeam Corpo-*

---

**2.** Where a complainant has not "initially instituted proceedings with a State or local agency," he must file his charge with the EEOC within 180 days after the occurrence of the alleged unlawful employment practice.

*ration*, 459 F.2d 811, 828–29 (7th Cir. 1972). What may be noted in addition, however, is even more to the present point: plaintiff's own explanation of his references, in both his EEOC charge and his present complaint, to a continuing discrimination by defendant.

■ Thus, according to plaintiff's own lights, defendant's 1974 refusal to hire has continued to impact upon plaintiff at least to the extent that he remains unemployed to date.[3] However, as another court has observed in an analogous context, "Once a disparaging remark is made or a transfer is denied, or a demeaning work assignment is given"—or, indeed, an application for employment is rejected—"it is, without more, a completed and isolated act: such practices"—however long-lasting their repercussions may appear from the subjective viewpoint of the aggrieved—"do not give the Plaintiff a perpetual right to file charges before the EEOC." *Loo v. Gerarge*, 374 F.Supp. 1338, 1340 (D.Haw.1974); see *Collins v. United Air Lines, Inc.*, 514 F.2d 594, 596 (9th Cir. 1975).

Equally unavailing to plaintiff is his suggestion that defendant had, subsequent to its August 1974 letter, rejected his employment application anew. In asserted support of that proposition, plaintiff cites (1) defendant's alleged rebuff of his "formal request" for a job during a November 1974 conference with the Regional Director of the State Human Rights Division and (2) a March 1975 exchange between plaintiff and defendant's attorney, a correspondence reflected in two letters that are quoted in full in the margin.[4]

Argument's sake will allow the assumption that rejection of a settlement proposal extended during the course of an agency proceeding may be the equivalent of a discriminatory refusal to hire. It may even be assumed, again *arguendo*, that the March 1975 letters can plausibly be construed as an employment application by plaintiff and a discriminatory rejection thereof by defendant. The critical fact remains, however, that the discriminatory acts thus identified by plaintiff occurred more than three hundred days before the filing of plaintiff's EEOC complaint.

■ As has been noted above, the EEOC for its part determined that its process had been timely invoked by plaintiff. This Court is not unmindful that "the EEOC's findings are ordinarily entitled to great

---

3. In an EEOC Affidavit form, plaintiff did cite his belief that defendant "is knowing[]ly and deliberat[e]ly exploiting the foreign nationals by giving them a considerable less salaries [sic], and thus replacing the U.S citizens, who naturally demand[] the going rates." It does not appear, however, that plaintiff's EEOC charge or his present action proposes to challenge defendant on that ground; nor would plaintiff appear to have standing to proceed on the strength of such allegation.

Moreover, revealing enough, plaintiff's presently outstanding request for interrogatories reads, in relevant part, as follows:

"Names of the employees of Indian Nationals [sic] Origin hired by [defendant] with Masters degrees in Economics, Operations Research, Math before the Month [sic] May, 1974 and June 1974  *  *  *."

4. Plaintiff's letter to defendant's attorney reads as follows:

"Dear Mr. Jossen

I hope this will find you in the best spirit of health. I just read a duplicate copy of your letter mailed to the State Human Rights—Appeal Board.

I called your number 593–9226, your secretary told me—you are out in the field. I would like to see you and resolve the matter if you think it proper. It would save the Bank, the outside agencies, a lot of improper use of time, & hence money. Please call (or) write me for an appointment. I would be glad to see you & your clients at any place convenient to you.

With regards,

Sincerely yours,

„

On March 6, 1975, defendant's attorney responded as follows:

"Dear Mr. Gautam:

I am in receipt of your letter of March 4, 1975 in which you request a meeting with a representative of First National City Bank and myself. In view of the fact that your case is currently on appeal before the State Human Rights Appeal Board, we believe that such a meeting would not be appropriate.

Very truly yours,

„

weight," *Weise v. Syracuse University*, 522 F.2d 397, 413 (2d Cir. 1975). Nevertheless, although the EEOC finding of timeliness might normally stand as a formidable hurdle to success of the present motion, that hurdle is not necessarily insuperable—*i. e.*, the agency's determination does not per-force conclude the matter here. See *Weise v. Syracuse University, supra,* at 413; *Macklin v. Spector Freight Systems, Inc., supra,* at 986.

In the present case, the EEOC clearly was swayed overmuch, or rather inferred more than was intended, by plaintiff's conclusory reference in his formal charge to a "continuing" discrimination on the part of defendant. Moreover, "the matters the Commission proceeds to investigate should assist in determining the scope of the complaint for purposes of applying" the provisions of Section 706(e), *Macklin v. Spector Freight Systems, Inc., supra* at 988. Such guidance hardly aids plaintiff in the present case. The EEOC determination did not derive from an independent investigation by the federal agency. Rather, the agency's decision rested squarely upon the record developed by the state commission—a record that, in turn, did not extend beyond a narrow inquiry into defendant's employment practices as of 1974. Furthermore, the EEOC conclusion respecting the timeliness of plaintiff's charge is inevitably cast in shadow by the agency's failure to advise defendant of the pendency of plaintiff's charge—a divergence from the ordinary course of EEOC proceedings, see 42 U.S.C. § 2000e–5(b)—and the consequent absence of possibly relevant input from defendant. *Cf. Kimelman v. Talley Industries, Inc.,* No. 75 Civ. 5482 (S.D.N.Y. September 28, 1976).

### III.

One final aspect of the present motion must be mentioned, if only to demonstrate that it has not been overlooked. Defendant appears to be wholly confident that the provisions of Section 706(e) establish preconditions to this Court's jurisdiction. However, as at least one other court has noted, such proposition—*i. e.*, that compliance with the limitation terms of Section 706(e) is an absolute jurisdictional prerequisite—has a precedential support that may well be more apparent than real. See *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975); *Equal Employment Opportunity Commission v. Nicholson File Company,* 408 F.Supp. 229 (D.Conn. 1976).

The matter remains, in any event, a "still-open question" in our own circuit. *Egelston v. State University College at Genesco, supra,* at 755 n.5. But *cf. DeMatteis v. Eastman Kodak Company,* 511 F.2d 306, 309 (2d Cir. 1975). The ultimate resolution of that question does not practically concern us here: whether the time requirement at issue be regarded as jurisdictional or, rather, as in the nature of a statute of limitations, the disposition of the present case must be the same. For, even if the three-hundred-day period be viewed in the latter light, there is here nothing to recommend a resort to equitable principles, such as those suggested in *Reeb,* that might spare plaintiff's complaint from dismissal.[5]

Title VII may indeed be unhappily "rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer," much less the layman, *Egelston v. State University College at Genesco, supra,* at 754. Nonetheless, the time requirements set by Congress were purposefully designed to safeguard defendants, as well as the interested agencies and courts, against stale claims. As for Title VII claimants, due diligence can generally serve as an effective safeguard against untimeliness for persons "with a reasonably

---

5. It is noted, finally, that plaintiff cannot—for obvious reasons—preserve his complaint against dismissal by his attempted resort to the Equal Pay Act, 29 U.S.C. § 206(d). The provision upon which plaintiff avowedly would stake his claim directs that, "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex * * *."

prudent regard for [their] rights." *Reeb v. Economic Opportunity Atlanta, Inc., supra,* at 930. In the present case, according to his own narrative, plaintiff regarded himself as the object of defendant's discrimination at least as early as August 1974. This Court has no license to accommodate plaintiff's claim by blinking either at that fact or at the limitation period defined by Congress.

Defendant's motion to dismiss is granted.

SO ORDERED.