Lillian R. LEIMAN, Plaintiff,

v.

FASHION INSTITUTE OF TECHNOLOGY, Board of Education of the City of New York, State University of New York, Frederick M. Blatt, Treasurer (F.I.T.), Defendants.

No. 77 Civ. 2762(MP).

United States District Court, S. D. New York.

Dec. 13, 1977.

Jose A. Rivera, Brooklyn, N.Y., for plaintiff.

W. Bernard Richland, Corp. Counsel of the City of New York, New York City by Patrick F. X. Mulhearn, Asst. Corp. Counsel, New York City, Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City by Marian B. Scheuer, Deputy Asst. Atty. Gen., New York City, for defendants.

POLLACK, District Judge.

This is an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5. Plaintiff, a woman of the Jewish faith born in 1923, seeks redress for alleged discrimination in employment on the basis of her sex, religion and age.

In April, 1974 the defendant Fashion Institute of Technology (FIT) placed an advertisement in the *Wall Street Journal*, seeking applications for two positions. The advertisement described one position as General Supervisor Accounting, involving direction of the bursar and various loan operations, and the other as Accountant, Senior, involving responsibility for three ancillary corporations and their financial reports. Plaintiff submitted an application and was interviewed by the defendant Frederick Blatt, the officer of FIT responsible for filling the positions. She did not specify for which position she was applying, and Blatt did not indicate for which position she was being interviewed.

On May 3, Blatt offered plaintiff what she allegedly believed to be the General Supervisor Accounting position, and she accepted. As Blatt told the plaintiff at that time, he previously had hired a man, Howard Bellizio, as well. Plaintiff was assigned duties which included accounting for the auxiliary corporations. Blatt discharged her on or shortly before October 3, 1974, and subsequently hired a man to perform duties including those which had been assigned to plaintiff. Plaintiff claims that after she was discharged, she learned for the first time that Bellizio, and not she, was hired for the position of General Supervisor Accounting. She now asserts that she was denied the supervisory position and was discharged due to discrimination.

On November 25, 1974, plaintiff lodged a complaint with the New York State Human Rights Division, which is still pending. On March 18, 1975, she filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that she had been discriminated against on the basis of sex. In that complaint, FIT was named as respondent, and Blatt was named in the space entitled "others who discriminated against you." EEOC issued a finding that there was no probable cause to believe a violation had occurred on March 15, 1977, and informed plaintiff of her right to sue. Plaintiff commenced this action on June 6, 1977, naming as defendants Blatt, FIT, the Board of Education of the City of New York, and the State University of New York (SUNY). The claim against SUNY was dismissed voluntarily before trial.

The complaint filed with the EEOC was not timely with respect to the hiring. Title VII provides that the complaint must be lodged with the agency within three hundred days of the incident in question or thirty days after notice that any state proceeding has terminated, whichever is earli-

er. 42 U.S.C. § 2000e–5(e). In the instant case, the complaint was filed at least 319 days after the hiring. Untimely filing with the EEOC is grounds for dismissal of a Title VII claim. *See Gautam v. First National City Bank*, 425 F.Supp. 579 (S.D.N.Y. 1976).

The filing may not be deemed timely on the theory that the hiring was part of a continuing violation, *see Savage v. Kibbee*, 426 F.Supp. 760, 764 (S.D.N.Y.1976). A refusal to hire normally is not a continuing violation. *Kohn v. Royall, Koegel & Wells*, 59 F.R.D. 515, 518 (S.D.N.Y.1973), *appeal dismissed*, 496 F.2d 1094 (2d Cir. 1974) (dictum). Plaintiff has not alleged that she was discriminated against between the time of the hiring and her discharge, five months later, nor is there any indication that the two alleged incidents complained of were elements of a pattern of discrimination or a unitary discriminatory scheme. An allegedly discriminatory employment decision not a continuing violation simply because it has long term consequences. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

The Court of Appeals for the Second Circuit, however, has adopted a tolerant attitude toward the procedural errors of Title VII plaintiffs. *See Egelston v. State University*, 535 F.2d 752, 754–55 (2d Cir. 1976). The Court's evaluation of the merits of this case makes it unnecessary to decide whether this tolerance would extend to the facts of the instant case.

Similarly, it is not necessary to rely on the fact that Title VII does not afford relief for the discrimination on the basis of age which plaintiff alleges. *See* 42 U.S.C. § 2000e–2. Nor is it necessary to consider the effect of plaintiff's failure to make any effort whatsoever to satisfy the administrative prerequisites for a claim pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 626(d).

█ Plaintiff is not entitled to relief as against the Board of Education. It is not necessary to decide whether plaintiff's failure to name the Board in the charge filed with the EEOC, normally a sufficient ground for dismissing a Title VII claim, *see Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969); *Miller v. International Paper Co.*, 408 F.2d 283, 291 (5th Cir. 1969), might be excused in this case, *see Solin v. State University*, 416 F.Supp. 536, 540 (S.D.N.Y.1976) (alternative holding). No evidence has been introduced regarding any conduct of the Board or its members. Neither is there any basis for holding the Board to account for the alleged misconduct of Blatt and FIT.

The testimony indicated that FIT is an autonomous institution. The Board of Education does not interfere with the conduct of its day to day affairs. At the time of the incidents giving rise to this action, personnel decisions were under the control of individual departments.

FIT's autonomy with respect to the Board of Education is further elucidated by chapter 63 of the New York Education Law, which governs the formation and organization of community colleges such as FIT. Pursuant to section 6302(2), the Board is the "local sponsor" of FIT. However, the Board provides less than half of FIT's budget, the balance being supplied by tuition payments and by the state. *Id.* § 6304. At the time these claims arose the Institute's Board of Trustees comprised five persons designated by the Board of Education and four persons appointed by the Governor, as authorized by sections 6306(1) and 6306(3).[1] The Board of Trustees directs FIT under the general supervision of the trustees of SUNY. *Id.* § 6306(2). The testimony indicated that the day to day affairs of the Institute are managed by the President, who is appointed by the Board of Trustees subject to the approval of the SUNY trustees, *id.*

Plaintiff does not assert that defendants applied any discriminatory standards or tests in connection with her employment. Rather, she alleges that she was subjected to individual discriminatory conduct. Plaintiff correctly refers the Court to *McDonnell Douglas Corp. v. Green*, 411 U.S.

1. The current provision for a tenth, non-voting trustee elected by the students did not become effective until August 1, 1975. Laws 1975, c. 587, § 4.

792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) as setting forth the law applicable to her allegations.

■ Where discriminatory refusal to hire is alleged, plaintiff may establish a prima facie case by showing (1) that she is a member of a minority or is a woman, (2) that she applied for a position for which she was qualified, (3) that she failed to obtain the position, and (4) that after she was denied the position, defendants continued to seek applications from persons of her qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Solin v. State University*, 416 F.Supp. 536, 538 (S.D.N.Y.1976). The employer may rebut such a prima facie showing by articulating a legitimate, nondiscriminatory ground for its action with respect to the plaintiff. Finally, plaintiff may avoid the effect of the employer's rebuttal by showing that the asserted justification for the conduct in question is merely a pretext for discrimination. *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282–83, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Green, supra*, 411 U.S. at 802–04, 93 S.Ct. 1817.

■ The credible evidence clearly and convincingly establishes that plaintiff was not the victim of any discrimination with respect to the hiring. First, the evidence showed that she was not qualified for the supervisory position. The position was to involve cost accounting and the development of computerized accounting systems. Plaintiff had little experience in either of these fields. Furthermore, Blatt learned from plaintiff's previous employers that she was difficult to work with. This propensity almost caused loss of her present employment in its early stages and required her transfer to another regional manager. Second, FIT did not continue to seek applications from persons of plaintiff's qualifications after refusing her the managerial position. Instead, the job was offered to a better qualified applicant, Howard Bellizio, who had extensive experience in developing computerized accounting and cost systems, which were the heart of FIT's need, albeit that cost accounting was not made a criterion for the job.

Defendants established, by clear and convincing evidence, two legitimate, nondiscriminatory grounds for the hiring decisions. First, Bellizio was better qualified for the position he received. Second, Blatt reasonably concluded at the time of the hiring that plaintiff was better qualified than Bellizio for the position for which *she* was hired.

Neither ground was a pretext. The conclusions reached by Blatt for FIT represented the exercise in good faith of an informed judgment and were reasonable under the circumstances. Blatt was justified in concluding that plaintiff was better qualified for the position with responsibility for the ancillary corporations because she had experience in accounting for the ancillary corporations at the SUNY campus at Stony Brook. The determination that Bellizio was better qualified for the other job was justified by his experience in computer application and cost accounting. FIT had acquired a computer shortly before the hiring decisions in question were made. While employed by FIT, Bellizio has restructured the entire office and has designed computer systems for accounts payable, accounts receivable, inventory, student check writing and student awards. The application of cost accounting to higher education was a novelty in 1974, but it was mandated by developments in the requirements for state and federal funding of higher education. SUNY has since had occasion to study and learn from the cost accounting procedures developed at FIT. Plaintiff's claim to equal fitness for the job is an over-generous self-estimation of her capability.

■ The law applicable to Title VII claims relating to firings is similar to the standards applicable to denial of employment. In *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282–84, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), the Supreme Court held that a prima facie case could be established by showing that plaintiff was discharged while similarly circumstanced members of a different statutory classification were not. Defendants may rebut the prima facie showing by demon-

strating a legitimate ground for their actions, and plaintiff may obviate the rebuttal by showing that the asserted justification constitutes a pretext.

■ The credible evidence clearly and convincingly establishes that plaintiff was not discharged for discriminatory reasons. Defendants established by clear and convincing evidence ample legitimate grounds for terminating her employment.

From the time she arrived at FIT, plaintiff was the subject of complaints by her fellow workers that she was difficult to get along with. Her subordinate, Mrs. Grappone, who had done satisfactory work for FIT for many years, threatened several times to resign on her account. The outside auditors retained by FIT to examine the books of the ancillary corporations reported several shortcomings in plaintiff's work. She permitted $300,000 to accumulate in a non-interest-bearing account despite instructions that she was to keep extra cash invested. She modified the ledger and accounts to merge revenues which a bond indenture required to be segregated, despite express instructions to the contrary. She failed to notice that electricity used in construction for FIT was being entered as an expense of the dormitory corporation, an error which an experienced accountant should have detected. In addition, the auditors reported that plaintiff was hard to work with, belligerent and condescending. Plaintiff failed entirely to provide Blatt with the monthly reports comparing actual and projected expenses which he repeatedly requested.

Plaintiff has not referred to any person of any classification whom FIT did not discharge under similar circumstances. To the contrary, plaintiff was given more than the usual number of opportunities to correct her work.

The man subsequently hired to perform duties including those which had been assigned to plaintiff previously was employed by the auditors responsible for reviewing the books of FIT's ancillary corporations. Consequently, he was uniquely qualified to solve the problems which resulted from plaintiff's failure to do her job.

In conclusion, the Court notes that Blatt, the officer of FIT responsible for plaintiff's hiring and discharge, is a coreligionist of the plaintiff and is only two years her junior. Of the thirty-one people whom he has hired while at FIT, nine are women, and three of the eight whom he has hired for supervisory and administrative positions are women. He has promoted seven women. In addition, the majority of FIT's full-time faculty are women.

Having seen and heard the witnesses herein, the Court finds that the contentions on behalf of the plaintiff in respect to both her hiring and discharge are not worthy of belief.

Accordingly, judgment shall be entered in favor of the defendants and against the plaintiff, dismissing the complaint, with costs.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

SO ORDERED.