Muhammad Ashraf **ALI**, Plaintiff,

v.

**NATIONAL BANK OF PAKISTAN,**
Defendant.

**79 Civ. 0197 (RWS).**

United States District Court,
S. D. New York.

Jan. 21, 1981.

Muhammad Ashraf Ali, plaintiff pro se.

Dunn & Zuckerman, P. C., New York
City, for defendant; Jeffry L. Feldman,
New York City, of counsel.

---

1. Ali, who was represented by counsel during
trial, apparently is proceeding *pro se* on re-

OPINION

SWEET, District Judge.

In this action the plaintiff Muhammad
Ashraf Ali ("Ali") alleged an unlawful em-
ployment practice by the defendant, his em-
ployer, the National Bank of Pakistan ("the
Bank") in violation of Title 42, Section
2000e–2(a)(1). Discrimination is alleged to
have occurred with respect to hiring, pro-
motion, reimbursement for expenses, demo-
tion, harassment, discharge and retaliation.
The alleged acts of discrimination against
Ali are claimed to reflect a policy of dis-
crimination by the Bank against light-
skinned Pakistan citizens from the Punjab
province in favor of darker-skinned Paki-
stan citizens from the province of Sind,
including preference for the latter in pro-
motion and elevation to supervisory posi-
tions.

The action was tried to the court on May
21, 22 and 23, 1980 and at the conclusion of
the trial an oral opinion was rendered and a
judgment dismissing the action entered.
An appeal was taken and on October 7, 1980
an opinion was filed by the Court of Ap-
peals in which the court stated that the oral
opinion of May 23, 1980 contained no cita-
tion of cases and failed to distinguish be-
tween fact and conclusions of law. The
court stated its inability to discern whether
or not the court below adhered to the prin-
ciples of *McDonnell Douglas Corp. v. Green*,
411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668
(1973), and further stated:

> We are therefore constrained to remand
> to the district court for its reconsidera-
> tion and we reserve judgment on the
> merits pending the receipt of revised
> findings and conclusions.

Upon remand, the parties were requested
to submit proposed findings and conclusions
which were received on November 25, 1980.[1]
What follows is the court's revised findings
of fact and conclusions of law.

*Findings of Fact*

Ali is a light-skinned individual whose
origins are in the Punjab, one of the four

---

mand. He submitted his own proposed find-
ings and conclusions on December 31, 1980.

present provinces of Pakistan.[2] He is a well-qualified, well-educated person holding B.A., M.A. and LL.D. degrees. Ali was employed by the Bank from January 19, 1974 until December 17, 1977 in various capacities. The Bank operates with between 25 and 30 employees in this district.

Certain of the supervisory officers of the Bank who testified at trial were darker than Ali (Messrs. Durvesh and Zahid) and others were substantially the same color as Ali or only marginally darker (Mr. Faroog, and both Messrs. Haider). Zahid was a native of the province of Sind. A number of employees of the Bank in New York were described as light-skinned, and those so described predominated in the less highly paid positions. Ali testified that natives of Punjab are lighter in complexion than those from Sind. No contrary evidence was adduced. No evidence by way of expert testimony or treatise was presented with respect to color differences among the various provinces of Pakistan, or discrimination based on color. Ali is darker in complexion than those commonly termed white in the United States.

Color alone does not suffice to establish the provincial origin of a Pakistan citizen. No statistical evidence was presented with respect to the number and color of the employees of the Bank over any stated period of time. There was no evidence of any bank record which contained any reference to provincial origin or color.

During the period from 1974 to 1977 some seven individuals were hired by the Bank, three of whom were dark-skinned and received payment of $110 weekly starting salary; three of whom were light-skinned and were hired at $100, including Ali who was hired as a mail clerk. Those hired at $110 a week were hired at a significantly later date, at a time when the entrance level salary had risen to that amount. However, one employee—light-skinned—was hired at $100 in 1977. Officers of the Bank denied hiring on the basis of color or provincial

origin, and no evidence was adduced to contradict their assertion that hiring was based solely on education, qualification, the Bank's requirements and the result of a personal interview.

No evidence was presented to establish that training programs were limited to those of dark skin.

In the course of his employment by the Bank, Ali was promoted from mail clerk to general duty clerk to document checker, a task which involves reviewing the requirements set forth in letters of credit and determining whether the documentation with respect to those letters will permit the execution of the letter. Further, there has been testimony by a responsible officer of the Bank that no supervisory positions have been accorded to anyone locally in the New York branch; that such supervisory determinations are made in the head office. There is no indication of a dark-skinned employee similarly situated to Ali, having achieved a supervisory position. During his employment Ali sought to be reimbursed for tuition for banking-related courses. A trail of corporate documents established that the institution of reimbursement for such courses was legitimately limited to a class of employees not including Ali.

Ali, after a series of promotions, reached a pay level of $205 per week and was due for an annual increment in July, 1977. Prior to that time he received a demotion which arose out of an incident on May 4, 1977 between him and his supervisor Durvesh, who is of darker skin. There was no statement or record of any indication of any reliance upon color as a motivating factor for the acts which flowed from the episode. Indeed, it is apparent that Ali, a proud and capable man, felt put upon by his supervisor and by the latter's overruling of various positions which Ali had taken with respect to certain documents which he had checked. These were characterized in the testimony as "discrepancies," and the overruling of a discrepancy involves a redetermination as

2. The four provinces constituting Pakistan are Punjab, Sind, Baluchistan and Northwest Frontier.

to whether or not a particular letter of credit is to be executed.

These discrepancies, overruled by Ali's supervisor, apparently were brought to the attention of the manager of the Bank. The relationship between Ali and Durvesh was unsatisfactory. Durvesh testified that Ali sought removal from the letter of credit department; Ali claimed he was removed by Durvesh from the department. This factual issue need not be resolved, though I credit Durvesh on the matter, for having observed both men on the stand, there is no evidence that the demotion resulted from discriminatory motivation.

Ali was asked from time to time to run personal errands for officers of the Bank. None of these assignments, performed frequently in the course of other duties outside the Bank, were of such a demeaning nature that they could in and of themselves constitute discriminatory practices. Such things as getting lunch, dropping money off at the bank or acquiring books are, I believe, part of the give-and-take of everyday life, and no evidence was submitted to differentiate the requests of this kind made to Ali from requests of any of the other clerks or checkers.

The discharge of Ali arose out of a problem of divided responsibility. Ali felt that he was being asked to perform tasks which were inconsistent and which could not be performed within the required period of time. He was unwilling to accept this problem of division of responsibility and whether he resigned, as the bank officers stated, or whether he was discharged, the termination of the employment resulted not from his color, but rather from the nature of the difficult position in which he was placed and about which he complained. There was no evidence that similarly situated dark-skinned employees from Sind were retained while Ali was discharged. If Ali was discharged, there was cause for such discharge arising out of the performance of his duties.

With respect to retaliation, the incident giving rise to the demotion, set forth above, occurred on May 4, 1977. The plaintiff filed a complaint with the State Commission on Human Rights on May 16 and for the first time on May 20, learned that his wages had been reduced from $205 to $165. There is no direct evidence that the demotion resulted from the filing of the complaint rather than the incident with Durvesh already described.

### Conclusions of Law

Ali seeks to establish a prima facie case of disparate treatment under *McDonnell Douglas, supra.* *See also Furnco Construction Corp. v. Waters*, 438 U.S. 567, 575–78, 98 S.Ct. 2943, 2948–2950, 57 L.Ed.2d 957 (1978); *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 278–79, 96 S.Ct. 2574, 2577–2578, 49 L.Ed.2d 493 (1976); *Lieberman v. Gant*, 630 F.2d 60, 62–63 (2d Cir. 1980); *Leiman v. Fashion Institute of Technology*, 441 F.Supp. 854, 858–59 (S.D.N.Y. 1977), *aff'd. mem.* 591 F.2d 1330 (2d Cir. 1979). In this he fails for two reasons.

First, it has not been established that Ali is a member of a protected class under the statute. While differences in complexion exist between Ali and other employees of the Bank, as noted herein, and the literal language of the statute which prohibits discrimination on the basis of "color" would seem to apply to Ali's claim, the testimony regarding skin color variations among the peoples of Pakistan does not suffice to merit the division of Pakistanis into distinct "protected classes" according to color. It would be presumptuous of this court to seek to explain the derivation of the inference of discrimination recognized by the Supreme Court in *McDonnell Douglas, supra.* *See Furnco, supra.* Suffice it to note that the presumption of a protected class status on the basis of color is bound up with an entire national racial history. It may well be that there are indigenous discriminatory practices around the world having nothing to do with the American experience. However, there is no basis on this record for the recognition of skin color as a presumptive discriminatory criterion (rooted, one would suppose, in the intermingling of distinctive national or racial groups) in employment in Pakistan, or among Pakistanis in New

York, under the *McDonnell Douglas* guidelines.

Moreover, even if by the simple invocation of a lack of color Ali has become a member of a protected class, *see Felix v. Marquez*, 24 Empl.Prac.Dec. (CCH) ¶ 31,279 (D.D.C.1980) ("Color may be a rare claim, because color is usually mixed with or subordinated to claims of race discrimination, but considering the mixture of races and ancestral national origins in Puerto Rico, color may be the most practical claim to present."); 1 Empl.Prac.Guide (CCH) ¶ 234, and others of a darker color received different treatment than that accorded Ali, it has not been established that those receiving such different treatment were in the same situations as Ali. As found above, specific class-neutral circumstances attended the treatment of Ali which differentiated him. Similarly, Ali does not make out a prima facie case for discrimination on the basis of national origin. There was no evidence to establish a pattern of discrimination by ancestral national origin, or by color or provincial residence as actual indicators thereof—even assuming such evidence would constitute a cause of action.

Finally, as found above, the practices of the Bank with respect to Ali and any others of similar lack of color have been justified by the Bank as incident to normal business practice, devoid of discriminatory intent or effect. There is no evidence that this justification is pretextual.

Because Ali failed to establish a prima facie case of employment discrimination in violation of 42 U.S.C. § 2000e–2, and alternatively because the Bank adequately justified the practices complained of, the Bank is entitled to the judgment previously entered dismissing the action.

IT IS SO ORDERED.